**AMERICAN STATES INSURANCE CO., Plaintiff,**

v.

**HARTFORD CASUALTY INSURANCE CO., Defendant.**

**HARTFORD CASUALTY INSURANCE CO., Counter–Plaintiff,**

v.

**AMERICAN STATES INSURANCE CO., Counter–Defendant.**

No. 95–3232.

United States District Court, C.D. Illinois, Springfield Division.

Jan. 16, 1997.

Joseph A. Duesterhaus, James L. Palmer, Quincy, IL, for plaintiff.

Robert E. Gillespie, William P. Hardy, John E. Nolan, Springfield, IL, for defendant.

*OPINION*

RICHARD MILLS, District Judge:

Two insurance companies.

Declaratory judgment.

If one drives a used car dealer's automobile for nearly four months, is it a "test drive?"

We cannot so hold.

## I. FACTS

On April 30, 1993, Ronald Crook was driving a 1986 Ford Taurus southbound on U.S. Highway 61 in Ralls County, Missouri, when his vehicle collided head-on with a 1984 Ford Econoline Van driven by Remington T. White. The parties stipulate that the accident was a result of Crook's negligence. As a result of the collision, Crook was killed, and Remington T. White, along with the passengers in his car, Amy Young and Walter Crowder, sustained bodily injuries. The van, owned by Remington T. White's father, R.T. White, was damaged.

The Taurus was owned by Dan Griffin, d/b/a Griffin Motor Works, in Quincy, Illinois, and was covered under a policy issued by Plaintiff. Plaintiff's policy provided coverage for the named insured and any person using the covered automobile with permission. It excluded customers from coverage under the policy unless: 1) the customer did not have insurance, in which case the customer was an "insured" only up to the compulsory or financial responsibility law limits where the covered "auto" was principally garaged; or 2) the customer had other available insurance less than the compulsory or financial responsibility law limits where the covered automobile was principally garaged, in which case the customer was an "insured" only for the amount by which the compulsory or financial responsibility law limits exceeded the limits of the other insurance policy.

Defendant had issued a policy to Crook's wife, Linda Crook, d/b/a WZLZ–FM, a Quincy radio station. Ronald Crook was the co-owner and/or employee of WZLZ–FM. Defendant's policy provided coverage to the named insured and the spouse of the named insured if the spouse resides in the same household. There was some question as to whether Crook and his wife did reside in the same household.

Crook had never purchased or leased an automobile from Griffin but in May 1990, Crook's wife leased an automobile for a term of one year. In late 1992 or early 1993, Ronald Crook went to Griffin to discuss buying an automobile. He "test-drove" the Taurus for about three weeks. Crook then "test-drove" a Blazer for three weeks and a van for approximately three days. Subsequently, Griffin saw Crook driving automobiles from other dealerships. Crook went back to Griffin and "test-drove" the Taurus again. Griffin testified that while a "normal" test-drive lasted approximately one to two hours, and, on occasion overnight, he considered Crook to be on a test-drive, albeit an unusual one. He also testified that he considered Crook his customer, or at least a "potential customer." His rationale for allowing the extended "test-drive" was that Ron was a highly visible person, due to his job at the radio station, and Griffin thought it would be good for business.

Subsequent to the accident, Plaintiff, as the alleged insurer of Crook, received a demand from Young, Crowder and R.T. White for payment for their bodily injuries and/or property damage arising from the accident. In exchange for a full release of each of their claims, Plaintiff paid Young the sum of $6,000, Crowder the sum of $8,000, and R.T. White the sum of $4,000. Both Plaintiff and Defendant, each as the alleged insurers of Crook, received a demand from Remington T. White for payment of compensation for his bodily injuries arising from the accident. On or about August 4, 1995, both Plaintiff and Defendant contributed the sum of $85,000 for a total settlement of $170,000 to Remington T. White in full release of any claim of his arising out of the accident. In connection with such settlement, Plaintiff and Defendant entered into a written Agreement for Declaratory Judgment. This agreement provided that each would reimburse the other for their respective contribution to the settlement with Remington T. White according to a subsequent determination and/or adjudication by Declaratory Judgment as to their respective obligations under their respective policies of insurance.

On August 10, 1995, Plaintiff filed a Complaint for Declaratory Judgment requesting that the Court determine and adjudicate the rights and liabilities of the parties with respect to the two policies of insurance. On September 28, 1995, Defendant filed its Answer and Counterclaim. After denying the motions for summary judgment, the Court conducted a bench trial.

## II. ANALYSIS

The central issue in this case is whether Crook was a "customer" of Griffin within the meaning of the Plaintiff's policy.[1] Plaintiff's policy defined "who is an insured" as:

(1) You for any covered "auto".

(2) Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(d) Your customers, if your business is shown in the declarations as an "auto" dealership. However, if a customer of yours:

(I) Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

(ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered "auto" is principally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance.

Crook never purchased or leased a vehicle from Griffin. Therefore, whether he was a customer hinges solely on whether a person who test-drives a vehicle is a "customer" and if so, whether Crook was test-driving the Taurus when he was involved in the accident. Plaintiff's policy provides no definition of the term "customer."

The parties agree that Illinois law should be applied to resolve the coverage dispute because the policies in question were issued in Illinois to Illinois residents. *See United States Fire Ins. Co. v. CNA Ins. Cos.,* 213 Ill.App.3d 568, 157 Ill.Dec. 660, 663, 572 N.E.2d 1124, 1127 (1st Dist.1991). Under Illinois law,

[t]he construction of an insurance policy's provisions is a question of law. In construing an insurance policy, the court must

ascertain the intent of the parties to the contract. To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract. If the words in the policy are unambiguous, a court must afford them their *plain, ordinary, and popular meaning.* However, if the words in a policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer who drafted the policy.

*Outboard Marine v. Liberty Mut. Ins. Co.,* 154 Ill.2d 90, 180 Ill.Dec. 691, 699, 607 N.E.2d 1204, 1212 (1992) (citations omitted). Differing interpretations do not render a provision ambiguous. *White v. White,* 62 Ill. App.3d 375, 19 Ill.Dec. 380, 383, 378 N.E.2d 1255, 1258 (1978).

This Court must identify the plain, ordinary, and popular meaning of the term "customer." Black's Law Dictionary defines "customer" as "[o]ne who regularly or repeatedly makes purchases of, or has business dealings with, a tradesman or business. Ordinarily, one who has repeated business dealings with another. A buyer, purchaser, consumer or patron." BLACK'S LAW DICTIONARY 386 (6th ed. 1990) Webster's Third New International Dictionary defines "customer" as "one that purchases some commodity or service ... one that patronizes or uses the services." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 559 (unabridged ed. 1986). There are no Illinois cases specifically defining the term "customer." *See International Ins. Co. of New York v. Sentry Ins.,* 45 Ill.App.3d 634, 4 Ill.Dec. 267, 359 N.E.2d 1219 (1977) (court does not specifically address the issue but opinion assumes that a test-driver is a customer).

Decisions in other jurisdictions are somewhat more helpful. In *American States Insurance Co. v. McCann,* 17 Kan.App.2d 820, 845 P.2d 74 (1993), a case dissimilar to

---

1. If this Court had determined that Crook was Griffin's customer, other issues would have arisen, such as whether Crook was an insured under Defendant's policy and whether Defendant's policy provided "primary" or "excess" insurance.

the instant case in that the driver had engaged in serious negotiations to purchase the automobile, this Court nonetheless finds persuasive a comment made by the court:

> Interpreting "customer" to require an actual purchase would appear to preclude coverage for persons test-driving vehicles. Moreover, interpreting "customer" in this manner would seem to defeat the whole purpose of the exclusion, for once an individual purchased a vehicle, the car no longer would be owned by (the dealership) or covered by its policy. "An interpretation of a contract or agreement which evolves unreasonable results, when a probable and reasonable construction can be adopted, will be rejected." *Jim Carlson Const., Inc. v. Bailey,* 769 S.W.2d 480, 482 (Mo.Ct. App.1989).

*Id.* 845 P.2d at 78. *See also Frontier Ford, Inc. v. Carabba,* 50 Wash.App. 210, 747 P.2d 1099 (1987) (court held that person who test-drives an automobile is a potential purchaser and therefore covered as a customer.) Thus, this Court finds that it is possible, in fact, reasonable under the circumstances, for a person who test-drives an automobile to be considered a customer.

■ Nonetheless, the Court does not find that Crook was Griffin's customer because it does not believe that Crook was test-driving the Taurus at the time of the accident. Griffin himself testified that a typical test-drive lasts only a few hours. Griffin admitted that Crook was given no time, mileage or geographical restrictions. Additionally, Defendant offered the testimony of an expert witness, Ron Dunkel. Dunkel has been in the pre-owned and used car business for 38 years and is currently the manager of HPR Automotive Superstore in Springfield, Illinois. He is also the Vice–Chairman of the Auto, Truck Advisory Board and was previously the President and Executive Director of the Illinois Used Car Dealer Association.

Through his business, he traveled throughout Illinois and attended auctions all over the country. Dunkel claimed it was not custom and practice in the industry to allow a test drive for thousands of miles [2] or for months at a time.

Dunkel testified that the customary test-drive lasts one to two hours, although on rare occasions it may be overnight. It is not customary to allow the test-drive for a longer period of time because the purpose of a test-drive is to allow the driver to see how the automobile performs. There would be no reason to buy it if a person could drive various automobiles over long periods of time. Furthermore, an automobile cannot be sold if it is off the lot. Based on his training, education and experience, it was Dunkel's opinion that Crook was not a customer and was instead a permissive user of the Taurus.

The Court agrees with Dunkel's conclusions. Because Griffin and Crook were friends, it is very plausible that Crook's use of the Taurus was permissive, not a test-drive. The only other person Griffin ever let drive an automobile for a long period of time was another close friend. Furthermore, it does not make sense to allow a person to "test-drive" an automobile for months at a time and for thousands of miles. In fact, the warranty Griffin offered to purchasers of his automobiles was for 30 days/3,000 miles. Thus, Crook was supposedly allowed to "test-drive" the Taurus for a longer period than the warranty period Griffin gave to those who actually purchased an automobile. Given the fact that Crook drove the Taurus for three months and for several thousand miles, it defies logic to conclude that Crook was test-driving the Taurus.

The Court finds that Crook was not test-driving the Taurus at the time of the accident and was therefore not Griffin's customer. Crook was a permissive user of the Taurus and was covered under Plaintiff's policy.

**2.** It is not clear how many miles Crook put on the Taurus. The total miles put on the Taurus between November 28, 1992, the date of purchase by Griffin Motor Works and April 30, 1993, the date of the accident, was 5,664. During that five month period, Crook had the Taurus for almost four months (the first time he had the vehicle was for three weeks; the second time was for three months). Griffin was not sure if others had test-driven the Taurus during the time Crook did not have it but testified that if others had, it would only have been for an hour or two (the "normal" test-drive). Therefore, the Court concludes that Crook put the majority of the miles on the Taurus.

Defendant is entitled to reimbursement for the $85,000 paid to Remington T. White.

*Ergo,* declaratory judgment is granted in favor of Defendant. The Clerk is DIRECTED to enter judgment for Defendant and against Plaintiff in the amount of $85,000 plus costs.

IT IS SO ORDERED.

CASE CLOSED.