209 P.3d 147

**Jessica MESSINA, a single woman, Plaintiff–Appellant,**

v.

**MIDWAY CHEVROLET COMPANY, an Arizona corporation; The Arizona Property and Casualty Insurance Guaranty Fund, Defendants–Appellees.**

**Nos. 1 CA–CV 07–0649, 1 CA–CV 07–0878.**

Court of Appeals of Arizona, Division 1, Department A.

Dec. 18, 2008.

Reconsideration Denied Jan. 30, 2009.

Review Denied June 1, 2009.

Jeffrey I. Ostreicher, Phoenix, Attorney for Plaintiff–Appellant.

Norling Kolsrud Sifferman & Davis PLC by Darrell E. Davis, Kevin J. Sierka, Lisa M. Bliss, Scottsdale, Attorneys for Defendant–Appellee Midway Chevrolet.

Glover & Van Cott PA by Ryan J. Talamante, Phoenix, Attorneys for Defendant–Appellee Arizona Property and Casualty Insurance Guaranty Fund.

## OPINION

DOWNIE, Judge.

¶ 1 Jessica Messina ("Messina") appeals from the trial court's determination that James Bookhammer ("Bookhammer") was a customer of Midway Chevrolet Company ("Midway") and was thus not an insured under Midway's garage liability insurance

policy. Finding no genuine issue of material fact or error of law, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 On January 30, 2002, Bookhammer and Midway entered into a Retail Installment Sales Contract and Retail Order regarding a new 2002 Chevrolet Cavalier ("Cavalier"). Bookhammer took possession of the Cavalier that same day. The Sales Contract listed him as the "Buyer," and the Retail Order designated Bookhammer as the "Customer." [1] Bookhammer gave Midway a $500 check as a down-payment. Bank One, N.A. preliminarily agreed to finance the purchase. Bookhammer's check was later returned due to insufficient funds, and Bank One declined to provide financing.

¶ 3 In the late evening hours of February 8, 2002, Bookhammer drove the Cavalier across the center line of travel and collided head-on with Messina's Chevrolet El Camino. Bookhammer died within an hour of the accident, and Messina sustained several fractures and other injuries.

¶ 4 Messina filed suit against Bookhammer's estate and Midway on February 4, 2004. Initially, her only claim against Midway was for negligent entrustment. Following extensive discovery, the superior court granted summary judgment to Midway on this claim. In a third amended complaint, Messina sought declaratory relief—specifically, a declaration that: (1) Bookhammer was an insured under the "Garage Coverage" portion of Midway's insurance policy (the "Policy"); and (2) Midway was liable to Messina for its entire $250,000 deductible. In her fourth amended complaint, Messina reiterated these claims against Midway and added Arizona Property and Casualty Insurance Guaranty Fund ("Guaranty Fund") as a defendant.[2]

¶ 5 The Policy includes a provision under the "Who Is An Insured" heading of the Liability Coverage Section that states, in relevant part:

The following are "insureds" for covered "autos:"

(1) You for any covered "auto".

(2) Anyone else while using with your permission a covered "auto" you own, hire or borrow **except:**

. . .

(d) **Your customers, if your business is shown in the Declarations as an "auto" dealership.**[3] However, if a customer of yours:

(i) Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

(ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered "auto" is principally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance.

(Emphasis added.)

¶ 6 The Policy thus does not insure "customers" unless they have no other available insurance, or the insurance they do have is less than what Arizona law requires. At the time of the accident with Messina, Bookhammer was covered by an insurance policy to the extent of the $15,000 minimum financial responsibility requirements.[4] *See* A.R.S. §§ 28–4001, 4009(A)(2) (2004).

---

1. On January 30, 2002, Bookhammer also signed a document entitled "Customer Incentive Acknowledgment and/or Assignment," whereby he assigned a customer rebate in the sum of $2002 to Midway. That document stated that Bookhammer was "the ultimate retail purchaser or lessee" of the Cavalier.

2. Midway's Policy was with Legion Insurance Company. Legion became insolvent on July 28, 2003, and the Guaranty Fund assumed responsibility for administering Messina's claim. See Ariz.Rev.Stat. ("A.R.S.") § 20–667(C) (2002) (deeming the Guaranty Fund the insurer to the extent of the obligation on covered claims).

3. Midway is listed as an automobile dealership in the Policy declarations.

4. Clarendon National Insurance Company paid Messina $15,000 in partial settlement of her claim against Bookhammer. A stipulated judgment was later entered in favor of Messina and

¶ 7 Midway and Messina filed cross-motions for summary judgment on the insurance coverage issue. Guaranty Fund joined in Midway's motion, though it took somewhat different positions on the facts. Messina's motion incorporated a declaration by Jerry Slonsky, a former car dealership manager.

¶ 8 After concluding that Bookhammer was Midway's customer and did not qualify as an insured under the Policy, the superior court granted Midway's motion for summary judgment, denied Messina's motion, and entered separate judgments in favor of Midway and Guaranty Fund. Messina filed two appeals that were consolidated by stipulation of the parties.

## DISCUSSION

### I. Bookhammer Was Midway's "Customer."

¶ 9 We review *de novo* the trial court's grant of summary judgment. *Williams v. Baugh,* 214 Ariz. 471, 472, ¶ 5, 154 P.3d 373, 374 (App.2007). The interpretation of an insurance policy is a legal question for the court to resolve. *Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982). We interpret insurance contracts "according to their plain and ordinary meaning." *Am. Family Mut. Ins. Co. v. White,* 204 Ariz. 500, 503, ¶ 8, 65 P.3d 449, 452 (App.2003). Accordingly, we examine the Policy's terms from the standpoint of one untrained in law or the insurance business. *Thomas v. Liberty Mut. Ins. Co.,* 173 Ariz. 322, 325, 842 P.2d 1335, 1338 (App.1992). We will not rewrite an insurance policy "in an attempt to avoid possible harsh results." *State Farm Mut. Auto. Ins. Co. v. O'Brien,* 24 Ariz.App. 18, 20, 535 P.2d 46, 48 (1975).

¶ 10 On appeal, we view the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion for summary judgment. *Hill–*

*Shafer P'ship v. Chilson Family Trust,* 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990); *Unique Equip. Co. v. TRW Vehicle Safety Sys., Inc.,* 197 Ariz. 50, 52, ¶ 5, 3 P.3d 970, 972 (App.1999). We therefore assume that, at the time of the accident, Midway was the owner of the Cavalier.[5] We also assume that Bookhammer had Midway's permission to drive the Cavalier, which was a "covered auto" within the meaning of the Policy.

¶ 11 The Policy does not define "customer." Therefore, we interpret the term according to its ordinary meaning. *See Thomas,* 173 Ariz. at 325, 842 P.2d at 1338. Messina contends that a "customer" is limited to someone who "purchases a commodity or service." Because Bookhammer never actually paid for the Cavalier or had financing in place for the purchase, Messina maintains that he was not a customer of Midway's. We disagree.

¶ 12 No Arizona cases specifically define the term "customer" in the liability insurance context. However, this case closely resembles *American States Insurance Co. v. McCann,* 17 Kan.App.2d 820, 845 P.2d 74 (1993). In *McCann,* James McCann signed a purchase agreement for a new Pontiac Grand Prix and, after assuring the dealership that he could obtain financing, left with the car. *Id.* at 75. Two days later, McCann advised the dealership that he could not get financing and agreed to return the Grand Prix. *Id.* Before returning to the dealership, McCann was involved in an accident with the vehicle. *Id.* As in this case, the question was whether McCann was a "customer" under the "Who Is An Insured" clause of the dealership's policy, which covered permissive users but not customers. *Id.* at 76–78. The court rejected the argument that McCann was not a customer because he had not paid for the vehicle, stating:

American States argues that McCann went to Roper Pontiac intending to buy a car. He signed a purchase agreement, and the

against Bookhammer's estate in the sum of $450,000.

5. Whether title had passed to Bookhammer is analytically distinct from the issue of whether he was a "customer" within the meaning of the Policy. *See Winn v. Becker,* 163 Vt. 615, 616, 660

A.2d 284, 285–86 (1995) (holding that a person was a customer under the policy from the time he was a potential purchaser of the vehicle even though title had not passed to him at the time of the accident).

only question which remained was the financing. Interpreting "customer" to require an actual purchase would appear to preclude coverage for persons test-driving vehicles. Moreover, interpreting "customer" in this manner would seem to defeat the whole purpose of the exclusion, for once an individual purchased a vehicle, the car would no longer be owned by Roper Pontiac or covered by its policy.

*Id.* at 78. The court further noted that, "[i]f McCann was not a customer under any common-sense usage of the term, we do not know what he might have been." *Id.*

¶ 13 We agree with the reasoning in *McCann.* Interpreting "customer" to require a completed purchase would render the customer exception in the insuring clause meaningless. Once an individual pays for an automobile, he or she becomes the owner, and, at least under the Policy at issue here, there would clearly be no coverage. We reject Messina's claim, advanced at oral argument, that Bookhammer was transformed from a "customer" into a "non-customer" once his check bounced and Bank One declined to provide financing. Such an unwieldy and transitory definition of a customer is anything but "plain and ordinary."

¶ 14 Messina's reliance on *Integon Indemnity Corp. v. Federated Mutual Insurance Co.,* 131 N.C.App. 323, 507 S.E.2d 53 (1998), is unpersuasive. *Integon* involved a car dealership employee who brought his personal vehicle in for service at the dealership. While his vehicle was being serviced, the employee drove a "loaner" car and was involved in an accident with it. The North Carolina Court of Appeals held that the employee was the dealership's customer at the time of the accident and thus was not covered under its insurance policy. *Id.* at 55.

¶ 15 The *Integon* court recited a definition of "customer" as "one that purchases a commodity or service." Because the employee had incurred $800 in repair charges for his personal vehicle, he was deemed a "custom-

er." *Integon* does not, however, stand for the proposition that the *only* way a person becomes a car dealership's customer is to make an actual purchase.[6] Indeed, it was unnecessary for the *Integon* court to consider whether payment was a condition precedent to being a customer.

¶ 16 Messina also relies on *American States Insurance Co. v. Hartford Casualty Insurance Co.,* 950 F.Supp. 885 (C.D.Ill. 1997). In *Hartford,* a car dealership's liability insurer sought a declaration that its policy did not provide coverage for a head-on collision caused by Ronald Crook. The dealership's owner had loaned Crook the vehicle he was driving at the time of the accident. Crook was a friend of the owner's and was affiliated with a local radio station. Crook did not sign a contract to purchase the vehicle, and he never agreed to pay for it.

¶ 17 The policy language at issue in *Hartford* mirrors Midway's Policy. The Illinois court declined to limit the term "customer" to a person who actually makes a purchase. *Id.* at 888. The court relied, in part, on *Webster's Third New International Dictionary,* which defined "customer" to include one who purchases a commodity or service **or** "patronizes or uses the services." *Id.* at 887 (citing *Webster's Third New International Dictionary* 559 (unabridged ed.1986)). The court also considered a definition drawn from *Black's Law Dictionary,* which included persons who have "business dealings" with a business. *Id.* (citing *Black's Law Dictionary* 386 (6th ed.1990)).

¶ 18 After articulating these definitions of "customer" (which support appellees' position here), *Hartford* begins to meaningfully diverge from the instant case. The court was required to determine whether Crook was test-driving the vehicle at the time of the accident; if so, he would be a customer, and there would be no insurance coverage. The dealership's owner testified that he loaned the vehicle to Crook because his business would receive favorable publicity if Crook

---

6.  Such a holding would be contrary to the majority view that individuals who test drive a vehicle are customers of the dealership. *See, e.g., Am. States Ins. Co. v. Hartford Cas. Ins. Co.,* 950 F.Supp. 885, 887 (C.D.Ill.1997) (discussed *infra* at ¶ 16); *Frontier Ford, Inc. v. Carabba,* 50 Wash. App. 210, 747 P.2d 1099, 1103 (1987) (person who borrows vehicle from dealer for test-driving is a potential purchaser and therefore a customer).

were seen driving it. *Id.* at 886. Crook had driven the vehicle for several months, covering thousands of miles. Under these circumstances, the court concluded that Crook was not conducting a true test drive. *Id.* at 888. It thus held that Crook was a permissive user and not the dealership's customer. *Id.*

¶ 19 In the case at bar, on the other hand, Bookhammer had all of the indicia of a "customer," as that term is commonly understood. He traveled to Midway's dealership, negotiated to buy a specific car, signed documents in furtherance of the purchase, completed paperwork for a credit check and financing, and left with the Cavalier. Unlike in *Hartford,* Bookhammer was not driving the Cavalier for marketing purposes or some other non-traditional purpose.

¶ 20 The superior court correctly determined that, as a matter of law, Bookhammer was a "customer" and therefore not an insured under the Policy. Even assuming *arguendo* that Midway bore the burden of proof in the court below (a point we do not decide), it met that burden based on application of the law to the relevant facts. *See Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991) (declining to reach the burden of proof allocation issue because, even assuming that Intel bore the burden of showing that contamination constituted an occurrence, Intel had met that burden).

## II. The Slonsky Declaration.

¶ 21 As discussed above, we conclude that Bookhammer was Midway's customer under the plain, ordinary meaning of that word. Notwithstanding her insistence on a plain language interpretation of the Policy, Messina argues that the superior court was required to consider a declaration submitted by Jerry Slonsky, whom she proffered as an expert in the automotive industry. Slonsky opined that Bookhammer was *not* Midway's customer because he did not pay for the Cavalier or "have the financial capability to buy a car." The trial court deemed it unnecessary to consider Slonsky's declaration, stating:

> Plaintiff's efforts to characterize Mr. Bookhammer as something other than a customer fail as a matter of law. However poor a customer Mr. Bookhammer's bad check and poor credit made him, he induced Midway to give him possession of the vehicle by entering into a purchase contract. **It requires no evaluation of expert testimony to determine that such a person is a "customer" of a car dealership.**[7]

(Emphasis added.)

¶ 22 The threshold test for expert testimony is whether it will assist the trier of fact. *Bliss v. Treece,* 134 Ariz. 516, 518–19, 658 P.2d 169, 171–72 (1983) (person with specialized knowledge may testify as an expert if his testimony will assist the trier of fact); *Adams v. Amore,* 182 Ariz. 253, 255, 895 P.2d 1016, 1018 (App.1994) (expert testimony is inappropriate if the trier of fact is qualified without such evidence to intelligently determine a particular issue); *see also* Ariz. R. Evid. 702 (expert testimony is admissible only when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue...."). Determining whether an expert's opinion will be of assistance is a matter within the sound discretion of the trial court, and its decision will not be disturbed on appeal absent a clear abuse of that discretion. *State v. Mincey,* 141 Ariz. 425, 441, 687 P.2d 1180, 1196, *cert. denied,* 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984); *Gemstar Ltd. v. Ernst & Young,* 185 Ariz. 493, 505–06, 917 P.2d 222, 234–35 (1996); *State v. Hummer,* 184 Ariz. 603, 607, 911 P.2d 609, 613 (App.1995). This deferential standard applies in the summary judgment context. *See Mohave Elec. Co-op. v. Byers,* 189 Ariz. 292, 301, 942 P.2d 451, 460 (App.1997).

¶ 23 As noted above, we give insurance policy terms their ordinary meaning and effect, and we view them from the standpoint

---

7. Contrary to Messina's argument, the trial court was not required to formally strike Slonsky's declaration. In determining that Slonsky's opinions were neither necessary nor helpful, the trial court implicitly ruled that the declaration failed to "set forth such facts as would be admissible in evidence...." Ariz. R. Civ. P. 56(e).

of someone untrained in law or the insurance business. *Thomas,* 173 Ariz. at 325, 842 P.2d at 1338. The trial court was well within its discretion in determining that it did not need the assistance of Mr. Slonsky in interpreting the word "customer." Messina's reliance on *Hartford* is once again unavailing. As noted *supra,* the ordinary meaning of the term "customer" was easily resolved by the court in *Hartford.* It allowed expert testimony only to determine whether decedent Crook's extended use of the vehicle qualified as a true test drive. We have no analogous issue here.

## CONCLUSION [8]

¶ 24 We affirm the superior court's grant of summary judgment. In the exercise of our discretion, we deny Midway's request for an award of attorneys' fees on appeal pursuant to A.R.S. § 12–341.01(A). However, as the prevailing parties, Midway and Guaranty Fund are entitled to an award of costs incurred on appeal upon compliance with Rule 21(c) of the Arizona Rules of Civil Appellate Procedure.

CONCURRING: MICHAEL J. BROWN, Presiding Judge and DANIEL A. BARKER, Judge.

---

8.  Messina did not make the argument that A.R.S. § 28–4009 mandated coverage for Bookhammer as a permissive user until her reply brief on appeal; we decline to consider the belated contention. *See Anderson v. Country Life Ins. Co.,* 180 Ariz. 625, 636, 886 P.2d 1381, 1392 (App. 1994) (arguments not presented until reply brief may not be considered by appellate court); *State v. Aleman,* 210 Ariz. 232, 236, 109 P.3d 571, 575 (App.2005) (generally, an appellant may not raise issues for the first time in a reply brief; if appellant does so, appellate court may disregard the new substantive issues raised).