NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

NICOLAI TAVILLA and DONNA TAVILLA, husband and wife; and on
behalf of their children, BRITNY NICOLE TAVILLA, KATHERINE
MARIE TAVILLA and ALYSSA JOYCE TAVILLA, *Plaintiffs/Appellants*,

*v.*

BLUE CROSS AND BLUE SHIELD OF ARIZONA, INC., an Arizona
corporation, *Defendant/Appellee*.

No. 1 CA-CV 12-0843
FILED 09-11-2014

---

Appeal from the Superior Court in Maricopa County
No.  CV2009-025256
The Honorable Lisa Daniel Flores, Judge

**AFFIRMED**

---

COUNSEL

Treon, Aguirre, Newman & Norris, P.C., Phoenix
By Richard T. Treon
*Counsel for Plaintiffs/Appellants*

Jones, Skelton & Hochuli, P.L.C., Phoenix
By Donald L. Myles, Jr., Jefferson T. Collins, Lori L. Voepel, and Jennifer
B. Anderson
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Chief Judge Diane M. Johnsen joined.

---

**W I N T H R O P,** Judge:

¶1 Plaintiffs/Appellants, Nicolai and Donna Tavilla, individually and on behalf of their children (collectively, "the Tavillas"), appeal the superior court's summary judgment in favor of defendant Blue Cross and Blue Shield of Arizona, Inc. ("Blue Cross") on the Tavillas' claims for breach of contract and breach of the implied covenant of good faith and fair dealing. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

¶2 The Tavillas entered a contract ("the Contract") with Blue Cross for health insurance. At all relevant times, the Contract has provided benefits for eligible prescription medications and excluded benefits for dental services, except in limited circumstances.

¶3 Nicolai Tavilla has a history of chronic pain dating to the 1990s. In 2004, Nicolai's pain management physician, Dr. Christopher P. Barnes, began prescribing Nicolai the medication ACTIQ, a solid form of the pain reliever fentanyl citrate that is placed on a plastic stick for absorption through the mouth. ACTIQ is a Schedule II controlled substance the Food and Drug Administration ("FDA") has approved "only for the management of breakthrough cancer pain in patients with malignancies who are already receiving and who are tolerant to around-the-clock opioid

---

[1] Blue Cross contends the Tavillas' statement of facts in their opening brief does not comply with Arizona Rule of Civil Appellate Procedure ("ARCAP") 13(a)(4), and asks us to disregard those factual assertions. The Tavillas argue the factual section of their opening brief satisfies ARCAP 13(a)(4). We rely on our review of the record for our recitation of the facts. *See Sholes v. Fernando*, 228 Ariz. 455, 457 n.2, ¶ 2, 268 P.3d 1112, 1114 n.2 (App. 2011); *State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 257 n.1, 963 P.2d 334, 336 n.1 (App. 1998).

therapy for their underlying persistent cancer pain." Because Nicolai did not have cancer, Dr. Barnes' prescription of ACTIQ was considered "off-label."[2] Although the Contract only provided coverage for prescription medications approved by the FDA for the diagnosis for which a medication was prescribed, Blue Cross nevertheless paid Nicolai's pharmacy claims for ACTIQ through November 2008.

¶4 In June 2007, Nicolai's dentist, Dr. Steven H. Poulos, informed Blue Cross that Nicolai had severe dental breakdown, with acute and chronic infection. Dr. Poulos stated the long-standing nature of the decay was "typical of that seen in individuals [who] use sugar containing lozenges," and he requested that Blue Cross authorize dental repair or replacement of nearly all of Nicolai's teeth. Blue Cross determined the dental services were not covered by the Contract and denied the request.[3]

¶5 The Tavillas filed this action against Blue Cross, alleging Blue Cross breached the Contract and the covenant of good faith and fair dealing implied therein by paying Nicolai's pharmacy claims for ACTIQ and refusing to pay for Nicolai's dental services.[4] The superior court granted summary judgment for Blue Cross on all claims.

¶6 The Tavillas timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (West 2014).[5]

---

[2] Off-label prescribing is "the prescription of a medication in a manner different from that approved by the FDA," such as the use of drugs for unapproved clinical indications or in unapproved subpopulations. Randall S. Stafford, *Regulating Off-Label Drug Use - Rethinking the Role of the FDA*, 358 New Eng. J. Med. 1427, 1427 (2008).

[3] Blue Cross later paid for a portion of Nicolai's dental services that were purportedly related to a February 2007 fall.

[4] In separate actions, the Tavillas sued Dr. Barnes and other health providers for alleged malpractice and the manufacturer of ACTIQ (Cephalon, Inc.) for alleged product liability.

[5] We cite the current version of all statutes unless revisions material to our decision have occurred since the relevant dates.

**ANALYSIS**

¶7        The Tavillas allege the superior court erred by granting summary judgment for Blue Cross on their claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  We disagree.

¶8        We review *de novo* the entry of summary judgment, viewing the evidence and reasonable inferences therefrom in the light most favorable to the party opposing the motion.  *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003).  Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a); *accord Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990) (explaining that summary judgment is proper "if the facts produced in support of the claim . . . have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim").

¶9        Interpretation of an insurance contract is a question of law, which we review *de novo*.  *Messina v. Midway Chevrolet Co.*, 221 Ariz. 11, 14, ¶ 9, 209 P.3d 147, 150 (App. 2008).  A court's purpose in interpreting a contract is to ascertain and enforce the contracting parties' intent.  *Elm Ret. Ctr., LP  v. Callaway*, 226 Ariz. 287, 290, ¶ 15, 246 P.3d 938, 941 (App. 2010).  In our review, we construe provisions in insurance contracts according to their plain and ordinary meaning, *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982), and examine the language "from the viewpoint of one not trained in law or the insurance business."  *Samsel v. Allstate Ins. Co.*, 204 Ariz. 1, 4, ¶ 8, 59 P.3d 281, 284 (2002).  If contract language is clear and unambiguous, it will be given effect as written.  *Hadley v. Sw. Props., Inc.*, 116 Ariz. 503, 506, 570 P.2d 190, 193 (1977).

        I.        *Breach of Contract*

        A.        *Payment for ACTIQ*

¶10        The Tavillas argue Blue Cross breached the Contract by paying Nicolai's pharmacy claims for ACTIQ even though the Contract excludes coverage for that medication.  We agree with Blue Cross that, because it had no contractual obligation to refuse to pay for ACTIQ and merely retained the right to refuse to pay for the medication, it did not breach the Contract by paying for ACTIQ.

¶11        In an action for breach of contract, the plaintiff has the burden to prove the existence of a contract, breach of the contract, and resulting

damages. *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, ¶ 30, 83 P.3d 1103, 1111 (App. 2004). "A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." Restatement (Second) of Contracts ("Restatement") § 1 (1981). "A promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement § 2(1). Before an alleged promise is imposed upon a party as a contractual obligation, it must reasonably appear from a fair interpretation of the contract that the alleged promisor has agreed to do (or refrain from doing) the act in question for the consideration claimed. *See generally Goetz v. State Farm Mut. Auto. Ins. Co.*, 142 N.W.2d 804, 807 (Wis. 1966) (citation omitted).

**¶12** As relevant to this appeal, the Contract provides in part as follows:

> **A prescription medication is eligible for coverage when:**
>
> - Approved by the U.S. Food and Drug Administration (FDA) for the diagnosis for which the medication has been prescribed . . . **and**
> - Dispensed by a pharmacy located in the U.S. and by a pharmacist licensed in the U.S., **and**
> - Not otherwise excluded by [Blue Cross.]

(Emphasis in original.)

**¶13** The Contract imposes a duty on Blue Cross to pay for covered benefits, but it does not conversely require Blue Cross to refuse to pay for excluded benefits. Instead, by describing the instances in which Blue Cross has no contractual obligation to pay, the contract reserves the right of Blue Cross to decline to pay for uncovered benefits - a rights reservation that is solely and unambiguously for the benefit of Blue Cross, not for the benefit of the insured. Because Blue Cross made no commitment to the Tavillas to refrain from paying for prescription medications that were not eligible for coverage, such payments did not constitute a breach of the Contract. We reject the Tavillas' argument that, by promising to pay for certain medications, Blue Cross assumed a corresponding obligation to refuse to pay for medications that were not eligible for coverage. The Contract does not contain that term, and we will not insert it. *See Isaak v. Mass. Indem. Life Ins. Co.*, 127 Ariz. 581, 584, 623 P.2d 11, 14 (1981) (stating that the appellate court may not "'revise, modify, alter, extend, or remake' a contract to include terms not agreed upon by the parties" (citations omitted)).

¶14 Moreover, the Taviillas have not cited, and we have not found, case law from any jurisdiction that turns an insurer's right to refrain from paying a claim for uncovered benefits into an obligation not to pay such a claim. The superior court properly granted summary judgment for Blue Cross on this allegation.

### B. Dental Services

¶15 The Tavillas next challenge the superior court's summary judgment for Blue Cross on their claim that Blue Cross breached the Contract by refusing to pay for certain dental services. The Contract specifically excludes benefits for dental services, except in limited circumstances: (1) the repair of sound teeth damaged by accidental injury, and (2) dental services integral to medical services. The Tavillas contend the superior court erroneously determined as a matter of law that Nicolai's dental claims did not fit either category.

### 1. Accidental Injury

¶16 The Contract provides coverage for dental services arising from an "accidental injury" to sound teeth:

> Benefits are available for repair of sound teeth damaged by an accidental injury.

> An "accidental injury" is an injury to the structures of the teeth that is caused by an external force or element such as a blow or fall. An injury to a tooth while chewing is **not** considered an accidental injury, even if the injury is due to chewing on a foreign object.

(Emphasis in original.)

¶17 The Tavillas argue Nicolai experienced dental decay as an adverse reaction to ACTIQ, and the decay was therefore an "accidental injury" to sound teeth covered by the policy. Even assuming for purposes of our review that Nicolai's teeth were "sound"[6] and his use of ACTIQ

---

[6] The Contract defines a "sound" tooth as one that is:

- Whole or virgin; **or**
- Restored with amalgam (silver filling) or composite resin (tooth-colored filling) or restored by cast metal,

caused his tooth decay, *see Andrews*, 205 Ariz. at 240, ¶ 12, 69 P.3d at 11 (stating that, when reviewing summary judgment, the appellate court views the facts and inferences in the light most favorable to the party against whom judgment was granted), we nevertheless determine as a matter of law that the Contract is not susceptible to the Tavillas' proffered interpretation.

¶18        The Contract provides coverage only for injuries "caused by an external force or element such as a blow or fall." A "blow" is "a forcible stroke delivered with a part of the body (as the fist or head) or with an instrument (as a hammer)," and a "fall" is "the act of dropping or descending by the force of gravity." Webster's Third New International Dictionary 239, 818 (1966). Long-standing decay allegedly resulting from the use of ACTIQ over several months or years as claimed by the Tavillas is not a sudden, traumatic event in the nature of a "blow or fall." *See Elm Ret. Ctr.*, 226 Ariz. at 291, ¶ 18, 246 P.3d at 942 ("[B]ecause specific contract provisions express the parties' intent more precisely than general provisions, specific provisions qualify the meaning of general provisions."). Moreover, the Contract states that an injury caused by chewing, even on a foreign object, is not an "accidental injury" within the meaning of the policy. The Tavillas' interpretation is contrary to that provision and, were we to accept it, any decay caused by food could be considered an "accidental injury," which is plainly inconsistent with the ordinary meaning and effect of the policy terms.[7]

¶19        Finally, the Tavillas contend the superior court erred by ignoring the opinion of their dental expert, Dr. Poulos, that Nicolai's dental

---

ceramic/resin-to-metal, laboratory processed resin/ porcelain restorations (crowns); **and**

- Without current periodontal (tissue supporting the tooth) disease or current endodontal (tooth pulp or root) disease; **and**
- Not in need of the treatment provided for any reason other than as the result of an accidental injury.

(Emphasis in original.)

[7]        We reject the Tavillas' alternative argument that Blue Cross was obligated to pay for Nicolai's dental services because it paid for ACTIQ when the Contract did not require it to do so. As discussed *supra*, Blue Cross did not breach the Contract by paying Nicolai's pharmacy claims for ACTIQ.

breakdown due to his use of ACTIQ constituted an "accidental injury" caused by an external force or element. We find no error, as Dr. Poulos' opinion would not have assisted the court in interpreting the Contract. *See Messina*, 221 Ariz. at 16-17, ¶¶ 22-23, 209 P.3d at 152-53 (holding that the trial court did not abuse its discretion by determining it did not need the assistance of the plaintiff's expert to interpret the word "customer" in an insurance agreement).

¶20        The superior court properly determined the Contract's provision for coverage of dental services arising out of accidental injuries did not include Nicolai's dental claims.

### 2.        *Required for a Medical Procedure*

¶21        The Tavillas next argue Blue Cross was bound by the Contract to pay for Nicolai's dental treatment because the treatment was "integral to medical services."

¶22        In pertinent part, the Contract states as follows:

> Benefits are available for dental services integral to medical services that would otherwise be excluded under the [Blue Cross] medical plan. These dental services must be medically necessary and an integral part of a medical service that is covered under this contract. These dental services may either be part of the medical procedure or may be performed in conjunction with and made necessary solely because of the medical procedure.

¶23        The Tavillas did not allege that removal/treatment of Nicolai's decayed teeth was necessary to any specific medical treatment covered by the Contract. Instead, they contended the relevant dental services were "integral to medical services" because Nicolai's dental decay likely contributed to his other medical problems and had to be fully treated before he could undergo surgery for his lumbar and cervical spine. Although poor dental health may affect a patient's overall health and increase the risks associated with invasive medical procedures, the Contract does not cover all dental services necessary for good health, only those "medically necessary and an integral part of" covered medical services. *See* Black's Law Dictionary 809 (6th ed. 1990) (defining the word "integral" as a "part or constituent component necessary or essential to complete the whole"). The Tavillas did not demonstrate that a material question of fact

existed concerning whether the relevant dental services were a necessary part of any covered medical services.[8]

¶24 The superior court properly determined that the Contract's provision for coverage of dental services integral to medical services did not apply to Nicolai's dental claims.

## II. *Breach of the Implied Covenant of Good Faith and Fair Dealing*

¶25 The Tavillas next contend Blue Cross acted in bad faith in its administration of the Contract's prescription benefits.[9] We disagree.

¶26 A covenant of good faith and fair dealing is implied in every contract for insurance under Arizona law. *See Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 508-09, 838 P.2d 1265, 1269-70 (1992). The insurer is obligated to act reasonably toward its insured and deal with the insured fairly and in good faith. *See id.* at 508, 838 P.2d at 1269. This requires the insurer to act in some fiduciary nature, giving the insured equal consideration, fairness, and honesty. *See Rawlings v. Apodaca*, 151 Ariz. 149, 155, 726 P.2d 565, 571 (1986). An insurer is not required to prevent all harm to the insured, but must act honestly, on adequate information, and not place paramount importance on its own interests. *Id.* at 157, 726 P.2d at 573. A party violates the implied covenant when it does "anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490, ¶ 59, 38 P.3d 12, 28 (2002). A breach of implied covenant claim arises only when the insurer acts in a manner that "damages the very protection or security which the

---

[8]     We further reject the Tavillas' argument that the superior court erred by not considering Dr. Poulos' opinion that the dental services were integral to Nicolai's medical services when it interpreted the Contract. *See Messina*, 221 Ariz. at 16-17, ¶¶ 22-23, 209 P.3d at 152-53.

[9]     The Tavillas also summarily state that Blue Cross acted in bad faith by "providing other dangerous drugs to [Nicolai] that caused him to be addicted," and failing to pay to have him "detoxified." We decline to consider these arguments because they were not properly argued. *See* ARCAP 13(a)(6); *Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167, 920 P.2d 41, 47 (App. 1996) ("Issues not clearly raised and argued in a party's appellate brief are waived." (citing *Carillo v. State*, 169 Ariz. 126, 132, 817 P.2d 493, 499 (App. 1991); *Jones v. Burk*, 164 Ariz. 595, 597, 795 P.2d 238, 240 (App. 1990))).

insured sought to gain by buying insurance." *Rawlings*, 151 Ariz. at 157, 726 P.2d at 573.

¶27        The Tavillas argue Blue Cross breached the implied covenant of good faith and fair dealing by failing to investigate and discover that Dr. Barnes was not prescribing ACTIQ to Nicolai for the treatment of cancer pain. In support of their argument, they offered evidence that Blue Cross could have reconciled Nicolai's medical and pharmacy claims and determined in 2004 that Dr. Barnes was prescribing ACTIQ to Nicolai for an off-label use. The Tavillas argue Blue Cross had superior knowledge regarding the nature and purpose of ACTIQ and was therefore obliged to inform Nicolai that the medication was dangerous and not eligible for coverage under the Contract.

¶28        Blue Cross did not breach the implied covenant of good faith and fair dealing or otherwise act in bad faith in its administration of the Contract's prescription benefits, either by paying for ACTIQ or by not monitoring Nicolai's treatment. As we have recognized, the Tavillas contracted with Blue Cross for payment of expenses incurred for covered health care services, as set forth in the Contract, and although Blue Cross retained the right to refuse to pay for off-label prescriptions, the Contract did not obligate Blue Cross to do so. Through their argument, the Tavillas attempt to place on Blue Cross an obligation it did not expressly or impliedly assume – that of protecting the Tavillas from the decisions of their medical providers or otherwise interfering with their medical care.[10] Contrary to the Tavillas' premise, however, the Contract disclaimed any responsibility by Blue Cross for medical decisions made by the Tavillas' medical providers:

> [Blue Cross]'s interpretation of medical necessity is a benefits determination made in accordance with the

---

[10]        Moreover, as the superior court recognized in granting Blue Cross's motion for summary judgment:

> In addition, there is no duty for [Blue Cross] to deny coverage of a medication because the medication could be harmful or addictive. To impose such a duty would put [Blue Cross] squarely between the insured and the insured's own physician. Arizona law specifically states that a health insurer is not liable for the negligence, malpractice or other acts of its participating hospitals, physicians, dentists or optometrists. A.R.S. § 20-836.

provisions of this contract, not a decision regarding a course of treatment. Therefore, [Blue Cross]'s medical necessity benefit determination may differ from your provider's determination of medical necessity. [Blue Cross] will interpret whether a service or supply is a medically necessary covered benefit. Whether to proceed with the service is a decision to be made between you and your provider.

. . . .

Patient care is decided between the provider and the subscriber. [Blue Cross]'s interpretation of medical necessity is a benefits determination made in accordance with the provisions of this contract. [Blue Cross]'s role is limited to administration of the benefits under this contract. Your provider may recommend services or treatment not covered under this contract. Whether to proceed with the service or procedure if benefits have been denied by [Blue Cross] is an issue to be decided between you and your provider.

. . . .

. . . Each provider exercises independent medical judgment. [Blue Cross]'s role is limited to administration of the benefits under this contract. Your provider may recommend services or treatment not covered under this contract. Whether to proceed with the service or procedure if benefits have been denied by [Blue Cross] is an issue to be decided between you and your provider.

. . . .

[Blue Cross] has no control over any diagnosis, treatment, care or other services rendered by any provider, and disclaims any and all liability for any loss or injury to you caused by any provider by reason of the provider's negligence, failure to provide treatment, or otherwise.

¶29 The Contract did not require Blue Cross to evaluate the decisions of Nicolai's health care professionals or otherwise protect him from the adverse effects of his prescribed treatment. Blue Cross did not breach the implied covenant of good faith and fair dealing by failing to investigate and discover Nicolai was using ACTIQ for a use not approved

11

by the FDA or failing to warn Nicolai that ACTIQ had dangerous side effects. *See Rawlings*, 151 Ariz. at 157, 726 P.2d at 573.

¶30          We also reject the Tavillas' argument that Blue Cross acted in bad faith by not timely evaluating ACTIQ to determine whether to require precertification for the medication.

¶31          In pertinent part, the Contract states as follows:

> Precertification is required for certain medications covered under the retail and mail order pharmacy benefit. A list of medications that require precertification and the process for obtaining precertification is available on the [Blue Cross] Web site . . . .

¶32          Blue Cross Vice President Christopher Hogan testified that Blue Cross will require precertification for certain medications based upon several factors, including the medications' cost, availability, and delivery methods, as well as the availability of alternative medications to treat the same condition. Once Blue Cross requires precertification for a medication, it obtains a patient's diagnostic information before making a benefit determination. In the fall of 2008, Blue Cross announced it would require precertification for ACTIQ. According to Hogan, Blue Cross made the decision to study ACTIQ and, ultimately, to require precertification after its costs for the medication increased relative to other prescription medications.

¶33          The Tavillas argue that if Blue Cross had timely evaluated ACTIQ for precertification after it came on the market in 1999, Blue Cross would not have paid Nicolai's pharmacy claims for ACTIQ because Dr. Barnes was prescribing it for an off-label use, and Nicolai would not have become addicted to it. As the Contract did not require Blue Cross to implement a precertification process for any or all covered medications, Blue Cross did not deprive Nicolai of his expected benefits under the Contract by failing to evaluate ACTIQ for precertification within a prescribed period of time. *See id*. Accordingly, Blue Cross did not act in bad faith by not evaluating ACTIQ for precertification until 2008.

¶34          Finally, the Tavillas maintain Blue Cross breached the duty of good faith and fair dealing it owed Nicolai in 2007, "when [Nicolai] specifically advised [Blue Cross] that the ACTIQ was rotting out his teeth and that he was addicted to it." Even assuming *arguendo* the duty of good faith and fair dealing would have required Blue Cross to take some action upon receiving such information, the Tavillas do not cite, and we do not

find, any evidence in the record to support this specific allegation. Although Nicolai's dentist, Dr. Poulos, informed Blue Cross in June 2007 that Nicolai had "severe dental breakdown" and "acute and chronic infection," and stated the "longstanding" decay was "typical of that seen in individuals that use sugar containing lozenges," he did not mention ACTIQ or Nicolai's purported addiction.[11]

¶35        The superior court correctly granted summary judgment for Blue Cross on the Tavillas' claim for breach of the implied covenant of good faith and fair dealing.[12]

---

[11]        In a declaration filed in the superior court, Nicolai referenced "dealing with" Blue Cross representatives from 2006 to 2008 "because of [his] addiction to ACTIQ," but did not aver that he told Blue Cross he was addicted to ACTIQ and it was causing his teeth to decay. Further, his counsel's unsworn statements that Nicolai communicated that information to Blue Cross are not evidence.

[12]        The Tavillas also assert Blue Cross breached the implied covenant of good faith and fair dealing by failing to timely evaluate ACTIQ to determine whether Blue Cross would require a lower member co-pay for the medication, thereby improperly shifting more of the cost to Nicolai. Although such a failure might constitute a breach of the implied covenant of good faith and fair dealing under some circumstances, *see Deese*, 172 Ariz. at 509, 838 P.2d at 1270 (reaffirming that a party may breach its duty of good faith without breaching an express covenant in the contract), the claim fails because there is no evidence Blue Cross would have moved ACTIQ to a different co-pay level if it had conducted an evaluation.

**CONCLUSION**

**¶36**		For the foregoing reasons, we affirm the superior court's summary judgment in favor of Blue Cross.  Because neither side has timely requested attorneys' fees, none are awarded.  We do, however, award Blue Cross its costs on appeal upon compliance with Rule 21, ARCAP.



Ruth A. Willingham · Clerk of the Court
FILED: gsh