ALHAMBRA-GRANTFORK TELEPHONE COMPANY, Petitioner, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents.

Fifth District   No. 5—04—0333

Opinion filed June 16, 2005.

Gary L. Smith, of Loewenstein, Hagen & Smith, P.C., of Springfield, for petitioner.

James E. Weging, Special Assistant Attorney General, of Chicago, for respondent Illinois Commerce Commission.

E. King Poor, of Winston & Strawn, L.L.P., of Chicago, for respondents Verizon Wireless and T-Mobile.

PRESIDING JUSTICE DONOVAN delivered the opinion of the court:

Alhambra-Grantfork Telephone Company (Alhambra) appeals from an order entered by the Illinois Commerce Commission (Commission) canceling its wireless termination tariff on the grounds that it failed to give proper notice of the tariff to affected commercial mobile radio service telecommunications carriers (CMRS carriers). On appeal, Alhambra contends that the Commission erred in finding that CMRS carriers were customers entitled to individual notice of its proposed tariff. Alhambra also contends that section 200.90(a) of Title 83 of the Illinois Administrative Code (Administrative Code) (83 Ill. Adm. Code § 200.90(a) (2000)) and section 10—101 of the Illinois Public Utilities Act (Act) (220 ILCS 5/10—101 (West 2002)), which allow out-of-state attorneys to petition to appear *pro hac vice* in Commission proceedings, encroach on the powers of the judiciary under the Illinois Constitution and are unconstitutional.

On December 18, 2003, Alhambra filed its proposed wireless termination tariff with the Commission pursuant to the special procedures for simplified noncompetitive tariff filings set forth in section 13—504(a) of the Act (220 ILCS 5/13—504(a) (West 2002)). The tariff filings establish compensation rates that a CMRS carrier will be charged each time a phone call originating on the CMRS carrier's equipment terminates on Alhambra's equipment within a major trading area. Alhambra was one of 19 incumbent local exchange carriers (ILECs) that filed tariffs according to the simplified procedures.

On January 20, 2004, a number of CMRS carriers filed a verified petition with the Commission. They sought a review of the tariffs filed by the ILECs, including Alhambra. The staff of the Commission filed a motion to cancel all the tariffs on the grounds that they were not filed in compliance with the notice requirements established in section 745.110(c) of Title 83 of the Administrative Code (83 Ill. Adm. Code § 745.110(c) (1996)). More specifically, the staff asserted that the tariffs should be canceled because the ILECs provided notice by publication pursuant to section 745.110(c)(2) of Title 83 of the Administrative Code rather than individual notice as required under section 745.110(c)(1) (83 Ill. Adm. Code §§ 745.110(c)(1), (c)(2) (1996)).

In response, Alhambra argued that section 745.110(c)(1) required an ILEC to provide individual notice to existing customers whose currently billed rates would be different as a result of the tariff. Alhambra claimed that at the time it filed its wireless tariff with the Com-

mission, notice by publication was proper because the CMRS carriers were not being billed by Alhambra and were not paying for services received from Alhambra, and Alhambra was not voluntarily providing services to any of them.

After considering the arguments of the parties, the Commission entered an order canceling the tariffs of all 19 ILECs, including Alhambra, on the grounds that they failed to give actual notice to affected customers, *i.e.*, CMRS carriers that would be charged under the tariffs. The Commission specifically found that the CMRS carriers were potentially affected customers of the ILECs and were entitled to individual notice of the proposed tariffs. The Commission cancelled the ILECs' tariffs without prejudice to refile them upon proper notice. The Commission did not make any findings on the issue of the justness and reasonableness of the proposed tariffs. Alhambra was the only ILEC that appealed the Commission's order.

■ A reviewing court generally gives substantial deference to the decisions of an administrative agency because of its experience and expertise. *United Cities Gas Co. v. Illinois Commerce Comm'n*, 163 Ill. 2d 1, 12, 643 N.E.2d 719, 725 (1994). On review, we are limited to considering whether (1) the Commission acted within its authority, (2) adequate findings were made to support the decision, (3) the decision was supported by substantial evidence, and (4) state or federal constitutional rights were infringed. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 322 Ill. App. 3d 846, 849, 751 N.E.2d 196, 199 (2001). The Commission's interpretation of its own rules is considered to be *prima facie* reasonable, and a reviewing court may not interfere with its interpretation unless the administrative construction is clearly erroneous, arbitrary, or unreasonable. *Commonwealth Edison Co.*, 322 Ill. App. 3d at 849-50, 751 N.E.2d at 199.

Initially, Alhambra challenges the Commission's determination that the CMRS carriers were potentially affected customers entitled to individual notice of the proposed tariffs under section 13—504(a) of the Act and section 745.110(b) of Title 83 of the Administrative Code (83 Ill. Adm. Code § 745.110(b) (1996)). Alhambra argues that section 745.110(c) sets out two classes of customers, those who are existing customers with currently billed rates and all other customers. Alhambra contends that notice by publication was proper because CMRS carriers were not existing customers as of the date the tariff was filed. Alhambra notes that CMRS carriers had not been paying Alhambra for its termination services and that they had not been billed for those services.

■ ■ Section 13—504(a) states that the Commission shall permit changes in tariffs proposed by ILECs with no more than 35,000

subscriber access lines "upon the filing of the proposed tariff and 30 days['] notice to the Commission and all potentially affected customers." 220 ILCS 5/13—504(a) (West 2002). The Commission enacted notice provisions, which are found in sections 745.110(b) and (c) of Title 83 of the Administrative Code (83 Ill. Adm. Code §§ 745.110(b), (c) (1996)). Section 745.110(b) requires local exchange telecommunications carriers that file proposed tariffs pursuant to the simplified procedure set forth in section 13—504 of the Act to give 30 days' notice to the Commission and all potentially affected customers. 83 Ill. Adm. Code § 745.110(b) (1996). Section 745.110(c) identifies two forms of notice. Section 745.110(c)(1) states in pertinent part, "[ILECs] shall provide notice to all existing customers whose currently billed rates or charges will be different as a result of the proposed tariff by mailing this notice[,] postage prepaid, three days prior to the date that the proposed tariff is filed with the Commission." 83 Ill. Adm. Code § 745.110(c)(1) (1996). Section 745.110(c)(2) states in pertinent part that notice to all other customers "shall be by notice published in a secular newspaper of general circulation *** in the area served by the carrier." 83 Ill. Adm. Code § 745.110(c)(2) (1996).

The parties expend an excessive amount of time in a complex debate about the meaning of the word "customer." The word "customer" is not defined in the statute, and so we apply the rules of statutory construction and afford the statutory language its plain and ordinary meaning. See *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279, 786 N.E.2d 139, 151 (2003).

■ Webster's Third New International Dictionary defines "customer" as "2 a: one that purchases some commodity or service ***; esp: one that purchases systematically or frequently *** b: one that patronizes or uses *** services." (Emphasis omitted.) Webster's Third New International Dictionary 559 (1993). Black's Law Dictionary defines "customer" as "[o]ne who regularly or repeatedly makes purchases of, or has business dealings with, a tradesman or business." Black's Law Dictionary 348 (5th ed. 1979).

■ The record shows that CMRS carriers had been using the services of the ILECs and had ongoing business dealings with them prior to and at the time Alhambra filed its proposed tariff. It is clear from the record that CMRS carriers will be charged differently as a result of the proposed tariffs. Prior to the tariff filings, CMRS carriers were not charged for calls terminating on Alhambra's equipment. The Commission's interpretation of its rule fits within the purpose of the statute, which requires 30 days' notice to all potentially affected customers. On this record, we do not find that the Commission's decision, canceling Alhambra's tariff for the lack of proper notice to affected CMRS carriers, is clearly erroneous, arbitrary, or unreasonable.

■ The next issue is whether the Commission rule permitting an out-of-state attorney to practice *pro hac vice* before the Commission violates the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, § 1) and encroaches on the power of the judiciary under article VI of the Illinois Constitution (Ill. Const. 1970, art. VI).

According to the record, on January 20, 2004, Philip R. Schenkenberg, an out-of-state attorney, filed with the Commission a petition for an investigation of Alhambra's wireless termination tariff on behalf of a number of wireless carriers. During a status hearing held on February 9, 2004, attorney Schenkenberg advised the presiding hearing examiner that he was not licensed to practice law in Illinois, and he moved to be allowed to appear in the pending proceedings pursuant to section 200.90 of Title 83 of the Administrative Code. The motion was granted. A few weeks later, the Commission cancelled Alhambra's tariff on the grounds that Alhambra failed to provide proper notice to its affected customers. The Commission cancelled that tariff without prejudice, providing Alhambra an opportunity to refile the tariff with proper notice. Rather than refile the tariff, Alhambra elected to appeal the order. We are now affirming the Commission's order. Accordingly, the CMRS carriers' petition to investigate the justness and reasonableness of the proposed tariff and the propriety of any orders entered in regard to that action are no longer in controversy. Nevertheless, we will briefly address the question of the Commission's authority to allow an out-of-state attorney to appear before it, because it involves an issue that is likely to arise again and an authoritative determination might provide guidance to the Commission in the future. See *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 622, 104 N.E.2d 769, 772 (1952).

The Commission is a creation of the state legislature and possesses only the authority and power necessary to supervise all public utilities and to administer the regulatory laws under the Act. 220 ILCS 5/1—102, 2—101 (West 2002); *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 201, 555 N.E.2d 693, 697 (1989). Under the Act, the Commission is assigned many functions, including investigative, prosecutorial, advocacy, and decisionmaking roles. *Business & Professional People for the Public Interest*, 136 Ill. 2d at 202, 555 N.E.2d at 697. The Commission may adopt reasonable and proper rules and regulations relative to the exercise of its powers and functions. *Business & Professional People for the Public Interest*, 136 Ill. 2d at 203, 555 N.E.2d at 697; 220 ILCS 5/10—101 (West 2002).

In order to carry out its duties to conduct hearings and decide contested cases, the legislature has granted the Commission statutory

authority to allow out-of-state attorneys to appear before it upon the same terms and conditions that Illinois attorneys are permitted to appear before the corresponding administrative body in the state where the petitioning attorney is admitted to practice. See 220 ILCS 5/10—101 (West 2002). The Commission enacted rules of practice, including a regulation requiring out-of-state attorneys to petition for permission to appear in Commission proceedings. See 83 Ill. Adm. Code Part 200 (1996). Section 200.90(a) provides in pertinent part, "[A]ttorneys admitted to practice in states other than Illinois may appear and be heard upon special leave of the Hearing Examiner in particular cases." 83 Ill. Adm. Code § 200.90(a) (2000). In exercising its discretion, the hearing examiner is directed to consider the integrity and expediency of the process, fairness to all the parties, convenience, cost-effectiveness (83 Ill. Adm. Code § 200.25 (1996)), and whether petitioning attorney's home state grants leave to Illinois attorneys in similar situations. 83 Ill. Adm. Code § 200.90(a) (2000).

It is well established that the Illinois Supreme Court has the sole authority to license attorneys to practice law in Illinois, to regulate the practice of law, and to sanction or discipline attorneys admitted to practice in this state. *People ex rel. Brazen v. Finley,* 119 Ill. 2d 485, 519 N.E.2d 898 (1988); *In re Mitan,* 119 Ill. 2d 229, 518 N.E.2d 1000 (1987); *In re Application of Day,* 181 Ill. 73, 54 N.E. 646 (1899). Neither the Commission's rule nor section 10—101 of the Act authorizes the Commission to grant or to deny a law license or to discipline an attorney.

The separation of powers doctrine does not forbid every exercise of functions by one branch of government that conventionally is exercised by another branch. *City of Waukegan v. Pollution Control Board,* 57 Ill. 2d 170, 174-75, 311 N.E.2d 146, 148 (1974). Where the exercise of quasi-judicial power is incidental to the duty of administering the law in a practical and effective manner, it does not constitute an impermissible grant of judicial power. See *Cermak Club, Inc. v. Illinois Liquor Control Comm'n,* 30 Ill. 2d 90, 93, 195 N.E.2d 178, 179 (1963) (the liquor commission's orders revoking liquor licenses did not constitute an unconstitutional exercise of judicial power); *City of Waukegan,* 57 Ill. 2d at 184, 311 N.E.2d at 153 (the authority given by the Environmental Protection Act to the Pollution Control Board to impose civil penalties for violations is reasonably necessary to accomplish the legislative purpose of the agency and does not violate separation of powers provisions).

The Commission and its hearing examiners are authorized by statute to exercise quasi-judicial discretion in determining whether an attorney who is not licensed in this state may appear in a particular

cause before it. This discretionary authority assists the Commission in the performance of its adjudicative functions and is incidental to its duties under the Act. Moreover, this grant of authority is limited to Commission proceedings and does not impair the discretionary authority of any court in this state to decide whether to allow an out-of-state attorney to appear before it under Illinois Supreme Court Rule 707 (145 Ill. 2d R. 707). Alhambra's prayers that section 10—101 of the Act (220 ILCS 5/10—101 (West 2002)) and section 200.90(a) of Title 83 of the Administrative Code (83 Ill. Adm. Code § 200.90(a) (2000)) be declared unconstitutional and that it be awarded its attorney fees and expenses incurred in invalidating the administrative rule, pursuant to section 10—55(c) of the Illinois Administrative Procedure Act (5 ILCS 100/10—55(c) (West 2002)), are denied.

This court had previously taken with the case the CMRS carriers' motion to dismiss the appeal on the ground that it is moot. The motion is denied.

Accordingly, the order of the Illinois Commerce Commission is affirmed.

Affirmed.

GOLDENHERSH and KUEHN, JJ., concur.