# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Czapski v. Maher*, 2011 IL App (1st) 100948

---

| | |
|---|---|
| Appellate Court Caption | MARK CZAPSKI and ANNA CZAPSKI-FLOREK, Co-Special Administrators of the Estate of Roger Czapski, Deceased, Plaintiffs-Appellees, v. CHRISTOPHER MAHER, MOTOR WERKS OF BARRINGTON, INC., NATIONAL CASUALTY COMPANY, a Corporation, FEDERAL INSURANCE COMPANY, a Corporation, Defendants-Appellants (National Casualty Company, Defendant and Counterplaintiff-Appellant; Christopher Maher, Individually; Mark Czapski and Anna Czapski-Florek, Co-Special Administrators of the Estate of Roger Czapski, Deceased, Counterdefendants-Appellees). |
| District & No. | First District, Sixth Division<br><br>Docket No. 1–10–0948 |
| Filed | June 10, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A person who test-drives a motor vehicle is a "customer" within the meaning of defendant automobile dealership's umbrella and excess insurance policies that excluded "customers" from coverage, since the plain and ordinary meaning of the term "customer" includes a test-driver of an automobile when the dealership gives permission to test-drive a vehicle, the term in this context is not subject to more than one reasonable interpretation, and the courts in many jurisdictions, including Illinois, refer to test-drivers as "customers." |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09–CH–16166; the Hon. William O. Maki, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded with instructions. |
| Counsel on Appeal | Thomas H. Crouch and Kurt M. Zitzer, both of Meagher & Geer, PLLP, of Scottsdale, Arizona, and Roderick T. Dunne and Carrie Von Hoff, both of Karbal, Cohen, Economou, Silk & Dunne, LLC, of Chicago, for appellant National Casualty Company. |
| | Todd S. Schenk and Amber C. Coisman, both of Tressler LLP, of Chicago, for appellant Federal Insurance Company. |
| | Kevin M. Forde and Joanne R. Driscoll, both of Kevin M. Forde, Ltd., Thomas R. Rakowski, of Thomas R. Rakowski, P.C., and Timothy J. Cavanagh and Matthew M. Rundio, both of Cavanagh Law Group, all of Chicago, for appellees. |
| Panel | JUSTICE R. GORDON delivered the judgment of the court, with opinion.<br>Presiding Justice Garcia and Justice Cahill concurred in the judgment and opinion. |

**OPINION**

¶ 1    The key issue in this appeal is whether a person who test-drives a motor vehicle is a "customer" within the meaning of an auto dealership's umbrella and excess insurance policies.

¶ 2                                      BACKGROUND

¶ 3    This is a declaratory judgment action regarding coverage under an auto dealership's umbrella and excess insurance policies. The key issue in this appeal is whether a person who test-drives a motor vehicle is a "customer" within the meaning of two insurance polices which are the subject of the coverage question before us. For the reasons discussed below, we find that a test-driver is a "customer" in the context of the insurance policies that are the subject matter of this appeal.

¶ 4                                       I. Parties

¶ 5    Defendant Christopher Maher was test-driving a BMW automobile owned by defendant

Motor Werks of Barrington, Inc. (Motor Werks), accompanied by Motor Werks' salesperson Roger Czapski, who was seated in the BMW's front passenger seat. Czapski was killed when the BMW collided with another vehicle.[1] The collision resulted in wrongful death and personal injury claims against Maher. The underlying wrongful death claim went to trial, resulting in a $13.72 million judgment against defendant Maher.

¶ 6 Prior to trial, plaintiffs, as well as the other passengers, filed a declaratory judgment action seeking declarations of coverage available to Maher under both: (1) certain insurance policies issued to Motor Werks, and (2) certain insurance policies issued to Kevin Maher, Christopher Maher's father. The dealership, Motor Werks, had purchased a $5 million umbrella policy from defendant National Casualty Company (National) and a $10 million excess policy from defendant Federal Insurance Company (Federal). These policies were purchased to protect defendant Motor Werks from liability in excess of its $1 million primary policy. Defendant Motor Werks was a party in the declaratory judgment action, but not in the underlying wrongful death litigation.

¶ 7                                                   II. Policies

¶ 8 The policies state that the term "insured" does not include the dealership's "customers." In particular, National's policy states under the heading "Auto Dealership Limitation Endorsement": "Your customers are not 'named insureds' or 'insureds' as defined in this policy."[2] Thus, the umbrella and excess policies insure the risk that the dealership itself would be liable for sums in excess of the primary policy, but do not insure the risk of a customer's liability.

¶ 9 The term "customer" also appears in an endorsement in National's policy entitled "Auto Dealership Limitation Endorsement." In relevant part, it states:

> "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
>
> * * *
>
> 4. Your customers are not 'named insureds' or 'insureds' as defined in this policy."

---

[1]Two friends of Maher were also occupants of the motor vehicle and were seriously injured as a result of the collision, but they are not parties to this appeal.

[2]Federal's policy stated that it "will follow the terms and conditions of the controlling underlying insurance policy scheduled in Item 6a of the Declarations." Item 6a identified UMO 0030211 (the policy number of the National umbrella policy) as the policy number of the controlling underlying insurance, and $5 million (the limits of the National umbrella policy) as the limits of the insurance for the controlling underlying insurance. It mistakenly identified the company issuing the controlling underlying insurance as "Scottsdale Insurance Company" rather than "National Casualty Company" (the company that issued the umbrella policy to Motor Werks). The trial court held that the Federal excess policy follows form to National's umbrella policy, and plaintiffs have not appealed that ruling.

¶ 10                    III. Procedural History

¶ 11    In the first declaratory action, National and Federal asserted that, as a test-driver, Maher was Motor Werks' "customer" and, therefore, not covered under Motor Werks' umbrella and excess policies. The trial court agreed, finding that Maher was not an insured and not covered under the policies. The trial court found that the term "customer" was unambiguous and included a test-driver.

¶ 12    On appeal, we found that the issue regarding whether Maher was covered by the umbrella and excess policies was not ripe for adjudication because Maher's liability in the underlying tort action had not yet been determined and that the first declaratory judgment action was premature. *Czapski v. Maher*, 385 Ill. App. 3d 861 (2008).

¶ 13    After judgment was entered in the underlying wrongful death action, plaintiff instituted this second declaratory judgment action. In this second action, a different trial judge granted plaintiff's motion for summary judgment and denied cross-motions for summary judgment filed by National and Federal. The second trial judge reached the opposite conclusion from the trial judge in the first action and found that the term "customer" was ambiguous. The second trial judge found that the term can be read to include only a person who has already made a purchase, and since Maher had not yet made a purchase, he was not a customer. The trial court reviewed various dictionary definitions and concluded that, even if the term "customer" could be interpreted to include a test-driver, this meant that the term was subject to multiple meanings and, therefore, was ambiguous. The trial court issued a declaratory judgment, finding that National and Federal had a duty to indemnify Maher. National and Federal then filed this timely appeal.[3]

¶ 14                         ANALYSIS

¶ 15    The interpretation of the word "customer" in the insurance policies here is solely a legal issue, which this court reviews *de novo*. *Founders Insurance Co. v. American Country Insurance Co.*, 366 Ill. App. 3d 64, 69 (2006) (the *de novo* standard applies to the interpretation of a contract and the review of a summary judgment).

¶ 16    Defendant argues that the trial court erred as a matter of law in its interpretation of the term "customer" by finding an ambiguity where none exists. Defendant claims that the court failed to give effect to the plain and ordinary meaning of the term "customer" as used in an automobile dealership policy and that the term "customer" includes one who is test-driving a dealership vehicle.

¶ 17    The burden is on the insurer to establish that a policy exclusion applies, and its applicability must be definite and free from doubt. *Insurance Corp. of Hanover v. Shelborne Associates*, 389 Ill. App. 3d 795, 799 (2009). Exclusion provisions that limit or exclude coverage must be construed liberally in favor of the insured and strictly against the insurer.

---

[3]Prior to oral argument, National was dismissed from this appeal by agreement of the parties. Even though National was dismissed as a party, its policy remains at issue in this appeal because its terms are incorporated by Federal's policy.

*State Security Insurance Co. v. Burgos*, 145 Ill. 2d 423, 438 (1991); *Pekin Insurance Co. v. Miller*, 367 Ill. App. 3d 263, 267 (2006).

¶ 18 In the case at bar, the term "customer" is not defined in National's policy. Under Illinois law, "[i]f the words in the policy are *** unambiguous, [a] court [must] afford them their plain, ordinary meaning and will apply them as written." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). If the words are susceptible to more than one reasonable meaning, then they are ambiguous and must be construed in favor of coverage and against the insurer that drafted the policy. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363 (2006); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108-09, 119 (1992).

¶ 19 This rule favoring coverage for an ambiguous term is especially true with respect to exclusionary clauses. *Outboard Marine*, 154 Ill. 2d at 119. When an exclusionary clause is relied upon to deny or limit coverage, it will be read narrowly and will be applied only where its terms are clear, definite, specific and free from doubt. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393 (2005). An ambiguity exists only if a term is subject to more than one reasonable interpretation. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005).

¶ 20 In the case at bar, defendant argues that the plain and ordinary meaning of the term "customer," as used in a policy issued to an auto dealership, includes one who test-drives an auto that the dealership holds out for sale. Defendant claims that several Illinois courts have specifically referred to a "test-driver" as a dealership's "customer." For example, defendant cites to the Illinois Supreme Court's opinion in *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 182 Ill. 2d 240 (1998). In that case, State Farm filed a subrogation claim against Universal, the dealer's garage liability insurer. *State Farm*, 182 Ill. 2d at 241. A test-driver was involved in a collision while test-driving a dealer's vehicle. *State Farm*, 182 Ill. 2d at 241. Our supreme court found that the motorist was covered under the dealer's insurance policy as primary coverage. Our supreme court observed that a state statute requires the inclusion of an omnibus clause in all automobile liability policies, and this clause requires liability coverage for all persons who use the named insured's vehicle with permission. *State Farm*, 182 Ill. 2d at 244. Although the supreme court referred to the test-driver as a "customer," the word "customer" was not at issue. *State Farm*, 182 Ill. 2d at 241. The court did not have to decide whether that test-driver fell into the category of a customer. *State Farm*, 182 Ill. 2d at 243. However, by calling the test-driver a customer, the word choice of our supreme court provides some instruction on the plain and ordinary meaning of the word "customer."

¶ 21 Defendant also cites a Third District case with basically the same scenario. Again, a court referred to the test-driver as a customer when the word "customer" was not at issue. *Country Mutual Insurance Co. v. Universal Underwriters Insurance Co.*, 316 Ill. App. 3d 161, 163 (2000).

¶ 22 Defendant argues that the term "customer," as used in an automobile dealership's insurance policy, includes a person who is considering the purchase of an auto by conducting a test-drive of a vehicle and that it is the plain, ordinary, commonsense meaning of the term

"customer" to include such a person. Defendant cites a number of cases from other jurisdictions. In all of these cases, the policies were garage liability policies and the state laws required the dealerships to obtain coverage for a permissive driver. However, in each of these cases, the courts referred to a test-driver of a dealership's motor vehicle as a "customer," and again, this provides us with further evidence that the plain and ordinary meaning of a "customer" includes a test-driver.

¶ 23    For example, a case from the Court of Appeal of Louisiana ruled that a dealership's insurer waived its defense of a policy exclusion and that a test-driver of one of the dealership's vehicles was an insured under a garage liability policy. In that case, it was undisputed by the parties that the test-driver was a "customer." *Alexander v. Cornett*, 42,147–CA; at 12 (La. App. 2 Cir. 7/11/07); 961 So. 2d 622, 630.

¶ 24    In a case from the Court of Appeals of Indiana, the garage liability policy interchanged the word "customer" with "a person *** operating an auto owned by the business described." (Internal quotation marks omitted.) *General Accident Insurance Co. of America v. Hughes*, 706 N.E.2d 208, 209 (Ind. Ct. App. 1999).

¶ 25    In another Court of Appeals of Indiana case, a test-driver was denied coverage under a garage dealer insurance policy because the vehicle was not owned by the dealership. The case was decided on the interpretation of the policy term " 'owned autos only' "; however, the court referred to the test-driver as a "customer." *Harden v. Monroe Guaranty Insurance Co.*, 626 N.E.2d 814, 818-19 (Ind. Ct. App. 1993).

¶ 26    Some cases in other jurisdictions have expressly ruled that the term "customer" does not mean only a person who has already made a purchase. In a case from the Court of Appeal of Louisiana, the defendant was test-driving a vehicle owned by a dealership when a collision occurred causing injury to the plaintiff. The defendant's grandmother was considering purchasing a vehicle for him. The dealership's insurer argued that the defendant was a "customer" of the dealership and excluded under its policy. The court ruled that the defendant was a customer and stated:

> "The exclusionary provision in the contract is clearly intended to exclude coverage for those members of the public whom the dealership permits to drive its vehicles in the ordinary course of trying to make a sale. This interpretation clearly suits the generally prevailing meaning of the term customer." *Marshall v. Seago*, 41,138–CA, at 8 (La. App. 2 Cir. 6/28/06); 935 So. 2d 752, 757.

¶ 27    The Supreme Court of Vermont held that a potential purchaser of a used vehicle was a "customer" of the dealership when he purchased the vehicle even though the prior owner had not executed the title certificate at the time of the collision. In that case, the claimants argued that the "customer" exclusion in the dealership policy did not apply because title to the vehicle had not passed, and therefore, the purchaser could not be deemed a "customer." The court stated:

> "We hold that [the purchaser's] status as a customer of [dealership] did not depend on who owned the vehicle at the moment the accident occurred. He became a customer, not when he took title to the purchased item, but when he was first 'a potential purchaser of a commodity.' [Citations.]" *Winn v. Becker*, 660 A.2d 284, 285

(Vt. 1995).

¶ 28    Here, the trial court based its ruling on dictionary definition of the word "customer" as "one who buys something" or "one that purchases a commodity or service."

¶ 29    Illinois courts have generally utilized dictionaries to determine the meaning of undefined terms in many contexts. In *Alhambra-Grantfork Telephone Co. v. Illinois Commerce Comm'n*, 358 Ill. App. 3d 818 (2005), the appellate court utilized Webster's Third New International Dictionary and Black's Law Dictionary to define the term "customer" as it was used in an administrative code provision requiring notice to "customers." *Alhambra-Grantfork Telephone*, 358 Ill. App. 3d at 822. First, the court noted that the parties engaged in a "complex debate" over the meaning of the term "customer." *Alhambra-Grantfork Telephone*, 358 Ill. App. 3d at 822. Then, the court resolved the debate by referring to two dictionary definitions to determine the "plain and ordinary meaning" of the undefined term:

> "Webster's Third New International Dictionary defines 'customer' as '2 a: one that purchases some commodity or service ***; esp: one that purchases systematically or frequently ***.' (Emphasis omitted.) Webster's Third New International Dictionary 559 (1993). Black's Law Dictionary defines 'customer' as '[o]ne who regularly or repeatedly makes purchases of, or has business dealings with, a tradesman or business.' Black's Law Dictionary 348 (5th ed. 1979)." *Alhambra-Grantfork Telephone*, 358 Ill. App. 3d at 822.

¶ 30    This division cited Black's Law Dictionary to define "party" as used in the Code of Civil Procedure for substitution of judges (735 ILCS 5/2–1001(a)(2)(i) (West 2006)) in *Powell v. Dean Foods Co.*, 405 Ill. App. 3d 354, 363 (2010), and cited Black's Law Dictionary and Webster's Unabridged Dictionary to define "coverage" as used in the Illinois Insurance Code in *All American Roofing, Inc. v. Zurich American Insurance Co.*, 404 Ill. App. 3d 438, 445 (2010). A recent edition of Black's Law Dictionary does not now define "customer." See Black's Law Dictionary (7th ed. 1999).

¶ 31    Our Illinois Supreme Court utilized Webster's Third New International Dictionary to define the word "entitle" in determining a policy exclusion. The court stated: "[when] a term in an insurance policy is not defined, we afford that term its plain, ordinary and popular meaning, *i.e.*, we look to its dictionary definition." *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 436 (2010). The Illinois Appellate Court has likewise used dictionaries to define terms in insurance policies. *General Star Indemnity Co. v. Lake Bluff School District No. 65*, 354 Ill. App. 3d 118, 127 (2004) (utilizing Webster's Third New International Dictionary and Black's Law Dictionary to define the term "damages" in an insurance policy); *United States Fidelity & Guaranty Co. v. Specialty Coatings Co.*, 180 Ill. App. 3d 378, 391-92 (1989) (utilizing Webster's Third New International Dictionary for meaning of "damages" in an insurance policy).

¶ 32    Webster's Third New International Dictionary also defines "customer" as "2 b.: one that patronizes or uses the services (as of a library, restaurant, or theater)." Webster's Third New International Dictionary 559 (1986). If we restrict the use to libraries, restaurants, and theaters, then a test-driver would not fit in that category. However, if the definition is not restricted to only three types of businesses, then a test-driver may be using or patronizing the

service of an auto dealership and may be a "customer" under that definition. It would be absurd if a person used the washroom facilities of a restaurant and was considered by definition a "customer," when a test-driver of an automobile would not be considered a customer until after he or she purchased an automobile. We do not find that the definitions of "customer" from the dictionaries are helpful in this case.

¶ 33    If the term "customer" applied only to a person who had already made a purchase, then the exclusion in the policy here would have little or no meaning. It may only apply to people who have previously purchased motor vehicles and are now test-driving another vehicle. The Court of Appeals in Kansas refused to accept a trial court's interpretation that was the same interpretation that the trial court made in the case at bar. *American States Insurance Co. v. McCann*, 845 P.2d 74 (Kan. Ct. App. 1993).

¶ 34    In *McCann*, defendant was given permission to take a vehicle from a dealership pending obtaining financing to pay for the vehicle. When McCann was unable to obtain the financing, he agreed to return the vehicle. Prior to returning the vehicle, he had a collision and the dealer's insurer denied coverage based on a "customer" exclusion. The Kansas district court interpreted "customer" to mean a person who has already made a purchase and ruled McCann was not a customer.

¶ 35    The Kansas appellate court reversed. It concluded that the district court's narrow interpretation was unreasonable because it essentially rendered the customer exclusion meaningless:

> "Interpreting 'customer' [to require an actual purchase] would seem to defeat the whole purpose of the exclusion, for once an individual purchased a vehicle, the car would no longer be owned by [the dealership] or covered by its policy. '[A]n interpretation of a contract or agreement which evolves unreasonable results, when a probable and reasonable construction can be adopted, will be rejected.' [Citation.]" *McCann*, 845 P.2d at 826.

¶ 36    An Arizona appellate court followed the same reasoning in *Messina v. Midway Chevrolet Co.*, 209 P.3d 147 (Ariz. Ct. App. 2008). It too concluded that interpreting the term "customer" to require an actual purchase was an unreasonable interpretation:

> "Interpreting 'customer' to require a completed purchase would render the customer exception in the insuring clause meaningless. Once an individual pays for an automobile, he or she becomes the owner, and, at least under the Policy at issue here, there would clearly be no coverage." *Messina*, 209 P.3d at 151.

¶ 37    An interpretation that renders a provision meaningless is not reasonable. *Atwood v. St. Paul Fire & Marine Insurance Co.*, 363 Ill. App. 3d 861, 864 (2006) (holding that a court is "not to interpret an agreement in a way that would nullify any of the provisions in the agreement or render them meaningless" (internal quotation marks omitted)); *Cincinnati Insurance Co. v. Gateway Construction Co.*, 372 Ill. App. 3d 148, 151-52 (2007) (rejecting as unreasonable a policy interpretation that rendered a provision meaningless).

¶ 38    In a case from the Supreme Court of Nebraska, the court found that the test-driver was a customer within the meaning of the policy provision defining "insured" not to include customers, but the court provided no reasoning in the opinion. *Leader National Insurance*

*Co. v. American Hardware Insurance Group*, 545 N.W.2d 451, 455 (Neb. 1996).

¶ 39 In addition, in a court of appeals case in Wisconsin, a driver of an automobile, who was test-driving a vehicle at the request of a potential buyer was found to be a "customer" of the dealership within the meaning of a garage liability policy. The court found that the risk associated with the test-driving of a dealer's autos was the type of risk that the dealership and insurer sought to exclude by their use of the term "customer." The court decided the case on the basis of the risk that the parties sought to exclude, not on the plain and ordinary meaning of the word "customer." *Johnson v. Heritage Mutual Insurance Co.*, 524 N.W.2d 900, 902 (Wis. Ct. App. 1994).

¶ 40 CONCLUSION

¶ 41 We conclude that the plain and ordinary meaning of the term "customer" in the context of an insurance policy includes a test-driver of an automobile when the dealership gives permission to test-drive the vehicle. We do not find the term "customer" in this context to be subject to more than one reasonable interpretation. The courts throughout many jurisdictions, including Illinois, refer to a test-driver as a "customer," the auto dealership and insurer seek to exclude test-drivers of automobiles from coverage when they use the word "customer," and the general public should be well aware that test-drivers are included in the term "customer." In sum, the plain and ordinary meaning of the term "customer" as used in an insurance policy issued to an automobile dealership would reasonably include one who test-drives an automobile before purchase. We therefore reverse the trial court and instruct it to deny plaintiffs' motion for summary judgment and grant National's and Federal's cross-motions for summary judgment.

¶ 42 Reversed and remanded with instructions.