# Illinois Official Reports

## Appellate Court

---

**Continental Casualty Co. v. Hennessy Industries, Inc.,**
**2019 IL App (1st) 180183**

---

| | |
|---|---|
| Appellate Court Caption | CONTINENTAL CASUALTY COMPANY and COLUMBIA CASUALTY COMPANY, Plaintiffs and Counterdefendants, v. HENNESSY INDUSTRIES, INC., for Itself and as Successor-in-Interest to Ammco Tools, Inc.; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, AND CERTAIN LONDON MARKET INSURANCE COMPANIES; EQUITAS INSURANCE LIMITED; AMERICAN HOME ASSURANCE COMPANY; ALLSTATE INSURANCE COMPANY, as Successor-in-Interest to Northbrook Excess and Surplus Insurance Company, f/k/a Northbrook Insurance Company; MUNICH REINSURANCE AMERICA, INC., f/k/a American Re-Insurance Company; EXECUTIVE RISK INDEMNITY, INC., f/k/a American Excess Insurance Company; FIRST STATE INSURANCE COMPANY; TWIN CITY FIRE INSURANCE COMPANY; HARTFORD UNDERWRITERS INSURANCE COMPANY, f/k/a New York Underwriters Insurance Company; UNITED STATES FIRE INSURANCE COMPANY; TIG INSURANCE COMPANY, f/k/a International Insurance Company and Successor-in-Interest to International Surplus Lines Insurance Company; TRANSPORT INSURANCE COMPANY, f/k/a Transport Indemnity Company; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; ZURICH AMERICAN INSURANCE COMPANY, as Successor-in-Interest to Zurich Insurance Company, U.S. Branch; and INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, Defendants (Continental Casualty Company, Plaintiff and Counterdefendant-Appellee; Hennessy Industries, Inc., for Itself and as Successor-in-Interest to Ammco Tools, Inc., Defendant, Counterplaintiff, and Cross-Defendant-Appellant; American Home Assurance Company, Defendant and Cross-Plaintiff-Appellee; Allstate Insurance Company, as Successor-in-Interest to Northbrook Excess and Surplus Insurance Company f/k/a Northbrook Insurance Company, and Munich Reinsurance America, Inc., f/k/a American Re-Insurance Company, Defendants and Cross-Defendants Appellees). |

| District & No. | First District, Second Division<br>Docket No. 1-18-0183 |
| --- | --- |
| Filed | April 23, 2019 |
| Decision Under<br>Review | Appeal from the Circuit Court of Cook County, No. 12-CH-17080; the Hon. Thomas Allen, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on<br>Appeal | Angela R. Elbert and Jason A. Frye, of Neal, Gerber & Eisenberg, LLP, of Chicago, and Gita F. Rothschild (*pro hac vice*) and Adam J. Budesheim (*pro hac vice*), of McCarter & English LLP, of Newark, New Jersey, for appellant.<br><br>Brent J. Graber, David C. Butman, and Douglas M. DeWitt, of Hinkhouse Williams Walsh LLP, of Chicago, for appellee American Home Assurance Company.<br><br>Robert R. Anderson III, Joshua Karsh, Daniel A. Waitzman, and Christopher A. Johnson, of Hughes Socol Piers Resnick & Dym, Ltd., of Chicago, for appellee Allstate Insurance Company.<br><br>Eileen King Bower, Alexander Rodd, and Emily Golding, of Clyde & Co US LLP, of Chicago, for appellee Continental Casualty Company. |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion.<br>Justices Mason and Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1     At issue in this declaratory judgment action is the insurance coverage available to defendant, Hennessy Industries, Inc. (Hennessy), for itself and as successor-in-interest to Ammco Tools, Inc. (Ammco), for personal injury claims arising out of the underlying

claimants' exposure to asbestos through the use of automobile brake equipment manufactured by Ammco. On appeal, Hennessy challenges the trial court's summary judgment determination that the thousands of underlying claims constitute a single occurrence under the relevant insurance policies and its failure to determine that the insurance policies that were in effect for more than one year plus a fraction of another provided an additional annual aggregate limit for the fractional period. For the reasons that follow, we reverse and remand for further proceedings.

## I. BACKGROUND

### A. Underlying Suits

Between the 1950s and mid-1980s, Ammco manufactured automobile brake equipment, including brake shoe grinders, brake lathes, and brake assembly washers. This equipment did not contain asbestos, but when used with brake shoes that did contain asbestos, Ammco's equipment was alleged to have caused the release of asbestos. Hennessy, as successor-in-interest to Ammco, was named in thousands of lawsuits (underlying suits) that alleged that the underlying claimants suffered personal injuries from the asbestos exposure caused by their use of Ammco's products. These exposures were alleged to have occurred at numerous locations throughout the country.

### B. Procedural History

In May 2012, plaintiffs, Continental Casualty Company (Continental) and Columbia Casualty Company (Columbia), instituted this declaratory judgment action, seeking a determination of the insurance coverage available to Hennessy for the underlying suits pursuant to insurance policies issued by multiple insurers. After numerous counterclaims and cross-claims filed by various defendants, the parties stipulated that there existed only four actual and justiciable issues (Litigation Issues) and that all other issues in the case had been resolved through settlement. The trial court entered an agreed order pursuant to the parties' stipulation, which identified the Litigation Issues as follows:

"i) The number of occurrences for purposes of determining the limits of liability in multi-year policies;

ii) The limits of liability available under the multi-year policies;

iii) How to calculate the applicable limits of liability for policies that were in effect for less or more than twelve months; and

iv) How the non-cumulation clause in certain of the Insurers' policies impacts the amount of coverage, if any, available to Hennessy."

Hennessy, Continental, and Allstate Insurance Company, as successor-in-interest to Northbrook Excess and Surplus Insurance Company, f/k/a Northbrook Insurance Company (Northbrook), filed cross-motions for summary judgment on Litigation Issue No. 1. Hennessy argued that under the plain language of the insurance policies issued by Continental, Northbrook, American Home Assurance Company (American Home), and Munich Reinsurance America, Inc., f/k/a American Re-Insurance Company (American Re-Insurance), the underlying suits must be grouped by location, with each location constituting a separate occurrence. In opposition, Continental and Northbrook argued that Ammco's continuous manufacture of the allegedly defective products constituted a single occurrence. After a hearing

on the issue, the trial court sided with Continental and Northbrook, concluding that the provision of the relevant policies calling for the grouping of claims based on location did not apply and that the continuous manufacture of the allegedly defective products constituted a single occurrence. Therefore, the trial court granted the motions of Continental and Northbrook and denied Hennessy's motion.

¶ 8 Hennessy then filed a motion for partial summary judgment on Litigation Issue No. 3. In it, Hennessy argued in relevant part that the insurance policies that covered more than one year plus a "stub" period (*i.e.*, a period of time less than one year[1]), such as the policies issued by Northbrook, American Home, and American Re-Insurance, provided an additional full annual aggregate limit for the stub period. American Re-Insurance and American Home opposed this motion on the basis that any decision on Litigation Issue No. 3 would be advisory, given the trial court's ruling that there was only a single occurrence and thus only one annual aggregate limit was available. Before the trial court's decision on the matter, Hennessy withdrew its motion on Litigation Issue No. 3 to the extent that it was directed against American Re-Insurance and Northbrook. After a hearing on the remaining motion against American Home, the trial court denied Hennessy's motion as it related to the stub period of American Home's policy, concluding that the issue was not ripe or justiciable as a result of the court's ruling on the number of occurrences. In the written "Agreed Final Order" memorializing the trial court's decision on Litigation Issue No. 3, the trial court noted that all other issues in the case had been resolved by agreement of the parties or by the trial court's decision on Litigation Issue No. 1, and that the agreed final order "fully and finally resolve[d] all disputes between all parties before the Court and is the final judgment in this action."[2]

¶ 9 Hennessy then instituted this timely appeal.

¶ 10 C. Relevant Insurance Policy Provisions

¶ 11 Continental issued three umbrella policies to Ammco that collectively covered the period of July 5, 1967, through July 5, 1976. Under those policies, Continental agreed to provide coverage for damages resulting from personal injuries "caused by or arising out of each occurrence." The Continental policies defined an occurrence as follows:

> "[A]n event or continuous or repeated exposure to conditions, which unexpectedly causes Personal Injury and/or Property Damage and/or Advertising Liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from each premises location shall be deemed one occurrence."

¶ 12 Northbrook issued a single umbrella policy covering the period of July 5, 1975, through December 31, 1978. That policy covered damages on account of personal injuries "caused by or arising out of each occurrence happening anywhere in the world." It defined an occurrence as follows:

> "[A]n accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property

---

[1]For example, the American Re-Insurance policy covered the period of July 16, 1976, through December 31, 1977. The period of July 16, 1977, through December 31, 1977, is considered the stub period.

[2]The other Litigation Issues were resolved prior to or with the entry of the agreed final order. They are not relevant to this appeal, however, so we do not discuss them in detail.

damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence."

¶ 13    American Home issued two excess policies. The first American Home policy covered the period of July 16, 1974, through July 16, 1976. The second American Home policy initially covered the period of July 16, 1976, through July 16, 1977, but was later extended through December 31, 1977, in exchange for an additional premium of $2,290.00. American Re-Insurance issued a single excess policy covering the period of July 16, 1976, through December 31, 1977. Both the American Home and the American Re-Insurance policies stated that unless otherwise provided, they followed the coverage terms and conditions of the above-discussed Continental and Northbrook policies. Because the policies issued by American Home and American Re-Insurance did not contain their own definitions of an occurrence, they followed the definitions provided by the Continental and Northbrook policies.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, Hennessy argues that the trial court erred in concluding that Ammco's manufacture of the allegedly defective products constituted a single occurrence and, instead, should have concluded that the claims must be grouped by location, such that all claims arising at a single location, *i.e.*, "emanating from one premises location," constitute a separate occurrence. Hennessy also argues that if we reverse the trial court's decision on the number of occurrences, we should address the issue of the number of annual aggregate limits available under the American Home policy and find that a separate, full annual aggregate limit applies to the stub period. We address each of these issues in turn. Before doing so, however, we note that we are not called upon to make any determination regarding Hennessy's liability in the underlying suits, *e.g.*, whether Ammco's products were actually defective. Accordingly, our decision should in no way be interpreted as passing judgment on any issues related to Hennessy's liability to the underlying claimants.

¶ 16    Preliminarily, we observe that summary judgment is to be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). We review both the trial court's grant of summary judgment and the interpretation of the policies *de novo*. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 360 (2006).

¶ 17                            A. Number of Occurrences

¶ 18    Hennessy's primary argument on appeal is that the trial court's conclusion that Ammco's manufacture of the allegedly defective product constituted a single occurrence is contrary to the plain language of the policies issued by Continental, Northbrook, American Home, and American Re-Insurance and, thus, must be reversed. More specifically, Hennessy argues that the second sentences of the occurrence definitions (premises language[3]) in the Continental and

---

[3]The premises language of the Continental policy provides, "All such exposure to substantially the same general conditions existing at or emanating from each premises location shall be deemed one occurrence." The premises language of the Northbrook policy provides, "All such exposure to

Northbrook policies plainly require the bundling of claims that arise from the same location, such that each location would be a separate occurrence. We agree.

¶ 19    Our supreme court has summarized the principles governing our interpretation of insurance policies:

> "Because an insurance policy is a contract, the rules applicable to contract interpretation govern the interpretation of an insurance policy. [Citations.] Our primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language. [Citations.] If the language is unambiguous, the provision will be applied as written, unless it contravenes public policy. [Citations.] The rule that policy provisions limiting an insurer's liability will be construed liberally in favor of coverage only applies where the provision is ambiguous. [Citations.] A policy provision is not rendered ambiguous simply because the parties disagree as to its meaning. [Citation.] Rather, an ambiguity will be found where the policy language is susceptible to more than one reasonable interpretation. [Citations.] While we will not strain to find an ambiguity where none exists [citation], neither will we adopt an interpretation which rests on 'gossamer distinctions' that the average person, for whom the policy is written, cannot be expected to understand [citation]." *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010).

¶ 20    Here, the premises language of the Continental and Northbrook policies clearly provides that where multiple exposures to substantially the same conditions occur at the same premises location, those multiple exposures should be considered a single occurrence. If all exposures to the same conditions at one location are grouped into a single occurrence, it necessarily follows that exposures to the same conditions at a different location should be grouped into a separate, single occurrence, such that where exposures occur at multiple locations, multiple occurrences will result. To read the occurrence definitions as providing that all claims arising from the exposure to the same conditions, even if they occurred at multiple, different locations, give rise to only one occurrence, would be to completely ignore the clear dictate of the premises language that claims arising from similar conditions at the same location should be treated as one occurrence. *Id.* ("If the language [of an insurance policy] is unambiguous, the provision will be applied as written, unless it contravenes public policy.").

¶ 21    Continental and Northbrook make a number of arguments against the above interpretation of the premises language. Their first and primary argument is that, rather than using the premises language to determine the number of occurrences, we should employ the "cause test," which mandates a conclusion that all of the claims arising from Ammco's manufacture of the allegedly defective products constituted a single occurrence. We disagree that the cause test is applicable in this case.

¶ 22    The cause test was adopted by Illinois courts to assist in determining the number of occurrences under an insurance policy when the terms of the policy do not otherwise clarify the issue. See *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 418-20 (2006) (adopting the cause test to overcome the problem that "the terms of the insurance policy are not always sufficient, standing alone, to permit a definitive determination as to whether a particular case involves one occurrence or many"). Under the cause test, the

---

substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence."

number of occurrences is determined by the number of causes of the underlying damages. *United Conveyor Corp. v. Allstate Insurance Co.*, 2017 IL App (1st) 162314, ¶ 27. In the specific context of claims for damages resulting from allegedly defective products, the application of the cause test has consistently resulted in the conclusion that the continuous manufacture and/or sale of the defective product was the cause of the damages and, thus, there was only a single occurrence. See, *e.g.*, *id.* ¶ 33 ("The single, unitary cause of claims against United is the fact that it incorporated asbestos-containing components or products into each of its systems designed for high-heat operations."); *United States Gypsum Co. v. Admiral Insurance Co.*, 268 Ill. App. 3d 598, 649-51 (1994) (cause of damages in claims based on exposure to asbestos-containing building materials was properly characterized as "the continuing process of the manufacture and sale of asbestos-containing products"); *Household Manufacturing, Inc. v. Liberty Mutual Insurance Co.*, No. 85 C 8519, 1987 WL 6611, at *4-5 (N.D. Ill. Feb. 11, 1987) (claims for damages resulting from defective plumbing system arose from a single occurrence because the cause of the damages was the sale of the defective system).

¶ 23     Although the cause test has application under certain circumstances, we conclude that, in this case, there is no need to employ the cause test because there is no question whether or how the numerous claims at issue should be bundled into occurrences; the premises language clearly requires the bundling of claims that arise from substantially the same conditions at the same location. Notably, none of the cases cited by Continental and Northbrook that employ the cause test involved policies that contained premises language. See *Nicor*, 223 Ill. 2d at 413; *United Conveyor*, 2017 IL App (1st) 162314, ¶ 6; *Aetna Casualty & Surety Co. v. O'Rourke Bros., Inc.*, 333 Ill. App. 3d 871, 875 (2002); *Missouri Pacific R.R. Co. v. International Insurance Co.*, 288 Ill. App. 3d 69, 72 (1997); *United States Gypsum*, 268 Ill. App. 3d at 605; *Household Manufacturing*, 1987 WL 6611, at *2. To employ the cause test in the present case and conclude that Ammco's continuous manufacture of the allegedly defective products constituted a single occurrence would be to completely ignore the premises language in the policies' occurrence definitions and render it meaningless. *Czapski v. Maher*, 2011 IL App (1st) 100948, ¶ 37 ("An interpretation [of an insurance policy] that renders a provision meaningless is not reasonable."). Accordingly, we disagree with Continental and Northbrook that the cause test should be blindly applied in cases involving claims of allegedly defective products, especially where the result would be in direct contravention of the otherwise plain language of the policies.

¶ 24     Continental and Northbrook also argue that the interpretation of the policies urged by Hennessy and adopted by us results in the application of the "effects test." The effects test is the counterpart to the cause test. Whereas Illinois has adopted the cause test to aid in determining the number of occurrences where the language of the insurance policy does not otherwise clearly provide, other courts have employed the effects test for the same purpose. The effects test "determines the number of accidents or occurrences by looking at the effect an event had, *i.e.*, how many individual claims or injuries resulted from it." *Nicor*, 223 Ill. 2d at 418. We think it is readily apparent that our interpretation is not the result of applying the effects test. First, like the cause test, the effects test has no application in this case because there is no need for an interpretative aid where the policy language is clear on if or how claims should be bundled for the purpose of determining the number of occurrences. Second, if the effects test were to be applied in the present case, it would not result in the conclusion that the

claims should be grouped by location; instead, it would result in the conclusion that each claim was a separate occurrence. The effects of Ammco's alleged negligence were not the various locations at which the exposures occurred but instead were the injuries to the claimants themselves.

¶ 25 Continental and Northbrook next argue that our interpretation of the premises language ignores the first sentences of the occurrence definitions. In making this argument, Continental and Northbrook seem to be under the impression that the first sentences of the occurrence definitions call for the bundling of all claims arising out of substantially the same conditions into a single occurrence, such that bundling claims based on location—per the premises language—contradicts the first sentence. This is not the case, however, because the first sentences of the definitions merely provide a general definition of what an occurrence is and do not provide any mechanism or guidelines for bundling claims, regardless of whether they arise out of substantially the same conditions. Accordingly, our interpretation of the premises language does not conflict or ignore the first sentences of the definitions; in fact, our interpretation of the premise language has no effect whatsoever on the first sentences of the definitions.

¶ 26 Similarly, Northbrook's contention that our interpretation transforms the policies from occurrence-based to claims-based is not well taken. According to Northbrook, our interpretation of the premises language equates the number of occurrences with the number of locations involved or the number of injuries claimed. Northbrook argues that there is nothing in the language of the occurrence definitions that states that all claims or injuries are separate occurrences or that, to be considered part of the same occurrence, claims must take place at the same location.

¶ 27 First, nothing about our interpretation of the premises language suggests that each claim or injury constitutes a separate occurrence. Northbrook is attacking a straw man in this respect, as no one—neither us nor Hennessy—has suggested that each injury or claim should be considered a separate occurrence. Nor does our interpretation automatically equate the number of occurrences with the number of locations at which injuries or claims take place. Rather, per the plain language of the policies, the number of occurrences is based on the number of premises locations only where multiple claims arise from substantially the same conditions existing at a single location. If multiple claims arise at a single location but are based on exposure to different conditions, they will not constitute a single occurrence. Finally, we do not address the issue of whether the only way to bundle claims is if they occur at the same location because the issue before us involves only the bundling claims based on location. It would be improper for us to pass on whether the bundling of claims is proper under different factual circumstances that are not before us. See *People ex rel. Partee v. Murphy*, 133 Ill. 2d 402, 408-09 (1990) (declining to render a decision on factual scenarios not before it because any decision doing so would be advisory).

¶ 28 Northbrook also contends that the premises language is actually a "premises deemer" clause that "consolidate[s] claims arising from a single cause into one occurrence when that cause originates *** at one location and then either recurs at the same location or spreads to others," such as chemical spills, discharge of water or air pollutants, or explosion. The problem with Northbrook's position, however, is that the language of the occurrence definitions does not support it. Although the premises language states that the same conditions must "exist[ ] at or emanat[e] from the premises location," it says nothing about the cause originating at the

premises location and then recurring at the location or spreading to different locations. We will not read such limitations into the policy where they are not clearly expressed. See *Collins v. Economy Fire & Casualty Co.*, 96 Ill. App. 3d 796, 798-99 (1981) ("This court cannot read into an insurance contract a limitation of liability where none exists. [Citation.] Nor would the court be justified in rewriting the contract by tortuous construction in favor of the insurer."). If Northbrook wanted to limit the premises language to such circumstances, it should have drafted its policies to make such intentions clear. It did not, and now it is bound by the terms it chose.

¶ 29 Finally, Continental complains that Hennessy changed its position on the number of occurrences during the handling of the underlying suits. Specifically, Continental claims that while seeking coverage under a primary policy issued by National Union Fire Insurance Company of Pittsburgh, PA (National Union), Hennessy agreed that all of the underlying suits arose out of a single occurrence. In contrast, Hennessy now claims that the underlying suits arise from multiple occurrences. Despite Continental's claim that Hennessy's positions in these respects were inconsistent, we have no way of assessing the validity of that claim, as Continental has failed to identify the relevant language of the National Union policy or cite to where in the record we might find it. The record in this case is over 6000 pages, and we are not required to search through it to find support for Continental's position. Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) requires the arguments of parties on appeal to be supported with citations to the authorities and the pages of the record relied on. Moreover, it has long been held that "[w]e are not a depository in which the parties 'may dump the burden of argument and research.' " *Collins v. Mid-America Bag Co.*, 179 Ill. App. 3d 792, 794 (1989) (quoting *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986)). Without the specific language of the National Union policy, we have no way of determining whether Hennessy's positions were, in fact, inconsistent. It is possible that the National Union policy contained entirely different language than the Continental and Northbrook policies that did, in fact, require all of the underlying claims to be grouped into a single occurrence. Because, however, Continental has failed to provide us with evidence of that language, however, we are unable to make that determination.

¶ 30 In sum, we conclude that the premises language of the occurrence definitions of the Continental and Northbrook policies clearly requires that claims arising out of substantially the same conditions existing at the same location be bundled into a single occurrence. This means that for each location at which multiple claims arose from substantially the same conditions, there will be a separate occurrence. Here, where multiple suits arose from the use of Ammco products at multiple premises and all allege injuries resulting from the exposure to asbestos caused by the use of the Ammco products, the suits arising at each location constitute a separate occurrence per the premises language. The trial court's conclusion to the contrary was error. On remand, the trial court is directed to enter summary judgment in favor of Hennessy on this issue.

¶ 31                                    B. Annual Aggregate Limits

¶ 32 Hennessy's second argument on appeal is that if we reverse the trial court on the issue of the number of occurrences, we should also conclude that the stub period of the American Home policy provided an additional annual aggregate limit. American Home, on the other hand,

argues that if we reverse on the number of occurrences, the issue of the annual aggregate limits should be remanded to the trial court to resolve on the merits. We agree with American Home.

¶ 33 As discussed above, the trial court concluded that the issue of the annual aggregate limits was not ripe or justiciable because it had concluded that there was only a single occurrence under the policies. Although labeling the issue as not ripe or justiciable, the trial court essentially found that the issue of the number of annual aggregate limits available under the American Home policy was moot following its ruling on the issue of the number of occurrences. Certainly, if the underlying claims did, in fact, constitute only a single occurrence under the policies, then the issue of the annual aggregate limits would be moot. See *La Salle National Bank, N.A. v. City of Lake Forest*, 297 Ill. App. 3d 36, 43 (1998) ("An issue is moot when its resolution could not have any practical effect on the existing controversy."). Because, however, we have concluded that the underlying claims constitute multiple occurrences, the issue of the number of annual aggregate limits available under the American Home policy is no longer moot.

¶ 34 Hennessy contends that we should decide the issue of the number of available annual aggregate limits rather than remanding it to the trial court for determination because American Home had the opportunity to present substantive argument and evidence to the trial court but instead chose to rely on its procedural argument. We disagree that American Home's decision to rely on a procedural argument that was, at the time, correct somehow results in forfeiture of its right to litigate the issue in front of the trial court in the first instance. Because the trial court did not address the merits of the issue on the number of annual aggregate limits available under the American Home policy on the basis that the issue was moot, we conclude that it is proper for us to remand the issue to the trial court, where the parties may present their substantive arguments and evidence in support of their respective positions.

¶ 35                                               III. CONCLUSION

¶ 36 For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the matter is remanded for entry of summary judgment in favor of Hennessy on the issue of the number of occurrences and for further argument and hearing on the issue of the number of annual aggregate limits available under the American Home policy.

¶ 37 Reversed and remanded with directions.